# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

|  |  |
|---|---|
| BRIAN CRAIG, CAROL BOWE, INSPIRE ADVISORS, LLC, STEVEN COOK, AND LAURA THOMPSON, | |
| *Plaintiffs*, | No.: 2:23-cv-599-JLB-KCD |
| v. | |
| TARGET CORPORATION, BRIAN C. CORNELL, DAVID P. ABNEY, DOUGLAS M. BAKER, JR., GEORGE S. BARRETT, GAIL K. BOUDREAUX, ROBERT L. EDWARDS, MELANIE L. HEALEY, DONALD R. KNAUSS, CHRISTINE A. LEAHY, MONICA C. LOZANO, GRACE PUMA, DERICA W. RICE, and DMITRI L. STOCKTON, | |
| *Defendants*. | |

## **DEFENDANTS' MOTION TO TRANSFER THIS ACTION**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 3

    A.    Plaintiffs Allege Securities Fraud Based on Target's Corporate Disclosures Disseminated from Minnesota. ......................................... 3

    B.    Plaintiffs' Claims Stem from Minnesota-Based Conduct and Involve Minnesota Witnesses. ............................................................. 4

    C.    Defendants' Alleged Conduct Has Minimal Ties with the Middle District of Florida. ............................................................................. 5

    D.    This Action Overlaps with Another Securities Action Pending in the District of Minnesota, Which Has a Lighter Civil Caseload. .......... 8

LEGAL STANDARD ........................................................................................ 9

ARGUMENT ................................................................................................. 11

I.    TRANSFER TO THE DISTRICT OF MINNESOTA IS APPROPRIATE BECAUSE THIS ACTION COULD HAVE ORIGINALLY BEEN BROUGHT THERE ............................................... 11

II.    THE DISTRICT OF MINNESOTA IS A MORE CONVENIENT VENUE AND THE INTEREST OF JUSTICE WILL BE SERVED BY TRANSFERRING THIS ACTION THERE ............................................... 11

    A.    The District of Minnesota Would Be More Convenient for Witnesses. ..................................................................................... 12

    B.    The District of Minnesota Is Where the Conduct at Issue Occurred. ..................................................................................... 15

    C.    One Plaintiff's Decision to File in This District Should Be Given Little Weight. ................................................................................ 18

    D.    Trial Efficiency and the Interest of Justice Favor Transfer. ................ 20

CONCLUSION .............................................................................................. 22

LOCAL RULE 3.01(G) CERTIFICATION ......................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*In re 3M Co.*,
 2020 WL 13924735 (3d Cir. Nov. 18, 2020)......................................................... 11

*American Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*,
 55 F. Supp. 2d 1347 (M.D. Fla. 1999) .............................................................. 14

*Austin v. Invs. Title Ins. Co.*,
 2009 WL 10670798 (M.D. Fla. June 24, 2009) .............................................. 19

*Awad v. Mayorkas*,
 2022 WL 1215521 (M.D. Fla. Apr. 7, 2022) ................................................... 19

*Baker v. Major League Baseball Props., Inc.*,
 2009 WL 1098482 (N.D. Fla Apr. 22, 2009).............................................. 15, 18

*Bonner v. City of Prichard*,
 661 F.2d 1206 (11th Cir. 1981)........................................................................ 13

*Clement v. Pehar*,
 575 F. Supp. 436 (N.D. Ga. 1983)................................................................... 17

*Continental Grain Co. v. Barge FBL-585*,
 364 U.S. 19 (1960) ............................................................................................. 9

*Cunningham v. Southwest Airlines*,
 548 F. Supp. 3d 1169 (M.D. Fla. 2021) ...................................................... 13, 14

*DeMoss v. First Artists Prod. Co.*,
 571 F. Supp. 409 (N.D. Ohio 1983)........................................................... 21, 22

*Elite Advantage, LLC v. Trivest Fun, IV, L.P.*,
 2015 WL 4982997 (S.D. Fla. Aug. 21, 2015) ................................................... 8

*Estate of Brooks v. United States*,
 2020 WL 4923639 (S.D. Fla. Jan. 22, 2020) ................................................... 10

*Fairstein v. Netflix*,
 2020 WL 5701767 (M.D. Fla. Sept. 4, 2020).............................................*passim*

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006) ........................................................ 18, 19

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
    418 F. Supp. 2d 164 (E.D.N.Y. 2006)................................................... 10, 11, 15

*Harvard v. Inch*,
    408 F. Supp. 3d 1255 (N.D. Fla. 2019) ......................................................... 15

*Huntley v. Chicago Board of Options Exch.*,
    132 F. Supp. 3d 1370 (N.D. Ga. 2015) .....................................................*passim*

*Koehring v. Hyde Constr. Co.*,
    324 F.2d 295 (5th Cir. 1963) ......................................................................... 13

*Manuel v. Convergys Corp.*,
    430 F.3d 1132 (11th Cir. 2005)................................................................. 10, 14

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016)........................................................................ 18

*Mitchell v. Edwards*,
    2009 WL 10667876 (M.D. Fla. Aug. 21, 2009) ............................................9, 11

*Morrissey v. Subaru of Am., Inc.*,
    2015 WL 9583278 (S.D. Fla. Dec. 31, 2015)................................................. 22

*Motorola Mobility, Inc. v. Microsoft Corp.*,
    804 F. Supp. 2d. 1271 (S.D. Fla. 2011) ......................................................... 21

*Perez v. Target Corp.*,
    No. 0:23-cv-00769-PJS-TNL ................................................................... 8, 9, 21

*Ravenwoods Inv. Co., L.P. v. Bishop Cap. Corp.*,
    2005 WL 236440 (S.D.N.Y. Feb. 1, 2005)................................................*passim*

*Response Reward System, L.C. v. Meijer, Inc.*,
    189 F. Supp. 2d 1332 (M.D. Fla. 2002) ........................................................ 14

*Seinfeld v. Bartz*,
    2001 WL 611295 (S.D.N.Y. June 5, 2001)................................................... 18

*Social Language Processing, Inc. v. Ott*,
    2013 WL 1442168 (S.D. Fla. Apr. 9, 2013)............................................... 15, 16

iv

*In re Stillwater Mining Co. Sec. Litig.*,
    2003 WL 21087953 (S.D.N.Y. May 12, 2003) ............................................ 13, 17

*Suomen Colorize Oy v. Dish Network*,
    801 F. Supp. 2d 1334 (M.D. Fla. 2011) ........................................................ 14

*Trump v. Simon & Schuster, Inc.*,
    2023 WL 5000572 (N.D. Fla. Aug. 4, 2023) .................................................. 20

*In re USA Technologies, Inc. Sec. Litig.*,
    2019 WL 4785780 (D.N.J. Sept. 30, 2019) .................................................... 13

*Windmere Corp. v. Remington Prods., Inc.*,
    617 F. Supp. 8 (S.D. Fla. 1985) .................................................................... 19

*Yes Lighting, LLC v. PSG Energy Grp., LLC*,
    2019 WL 13225114 (S.D. Fla. Sept. 19, 2019) .............................................. 10

## Statutes

15 U.S.C. § 78aa ..................................................................................................... 11

28 U.S.C. § 1404(a) ......................................................................................... *passim*

v

Defendants[1] respectfully move this Court for an Order transferring this action to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

This action belongs in Minnesota.  As this Court has held, when a case's nucleus of operative facts and material witnesses are located in a different forum, transfer to that forum promotes both efficiency and the interest of justice.  In securities actions, the center of gravity is almost always the forum from which the company disseminated its public disclosures, which is where the alleged misrepresentations and omissions are deemed to occur and where plaintiffs typically file.  When plaintiffs file in another forum, courts routinely transfer to the forum from which the statements were disseminated.

Minnesota is the center of gravity here.  Target, the primary Defendant and issuer of the securities and the alleged misstatements, is a Minnesota corporation that is headquartered in Minnesota.  The Individual Defendants, who are (or were) Target's executives and directors, performed the responsibilities relevant to the alleged fraud in Minnesota.  The disclosures and statements that are central to this case—Target's 2021 and 2022 Annual Reports, 2022 and 2023 Proxy Statements, and press releases

---

[1] Defendants are Target Corporation ("Target") and individual defendants Brian C. Cornell, David P. Abney, Douglas M. Baker, Jr., George S. Barrett, Gail K. Boudreaux, Robert L. Edwards, Melanie L. Healey, Donald R. Knauss, Christine A. Leahy, Monica C. Lozano, Grace Puma, Derica W. Rice and Dmitri L. Stockton (collectively, the "Individual Defendants").

regarding consumer backlash to the 2023 Pride Collection—were disseminated from Minnesota. And Plaintiffs contend that the disclosures were misleading because of conduct that they allege took place "at Target's Minneapolis headquarters" regarding Target's 2023 Pride Collection, which they allege was "a big priority for Minneapolis." (¶¶176, 202, 406.)[2]

Minnesota is thus the locus of operative facts and the most convenient venue for the key witnesses. It is home to virtually all of the potential witnesses and is where the material events and corporate decisions underlying this cause of action occurred.

By contrast, this District lacks any substantive nexus to this action. This District's sole connection to the alleged misconduct begins and ends with the legally insignificant fact that a minority of Plaintiffs (two out of five) reside in this District and that this District is where one Plaintiff allegedly received Target's Proxy Statements (¶54). Courts regard such connections as tenuous compared to the connection with the forum from which the alleged misrepresentations were disseminated. The remaining Plaintiffs—the majority—have subjected themselves to inconvenience wherever the action is litigated. Continued litigation in this District would thus inconvenience 17 of the 19 parties and almost all of the witnesses.

Transfer also serves the interest of justice, which favors the adjudication of disputes both at their center of gravity and with the greatest judicial economy. The

---

[2] References to "¶" are to the Amended Complaint (Dkt. 52) (the "AC"). For the purposes of this Motion to Transfer, Defendants take the facts alleged in the AC as true. References to "Ex." are to the exhibits to the declaration of Sandra C. Goldstein, executed January 26, 2024.

District of Minnesota has fewer weighted filings and a lighter civil caseload per judge than this District and is already adjudicating a purported securities fraud action involving overlapping defendants, disclosures, and determinations about alleged stock price inflation. And now is the time to transfer, as this Court has yet to make a ruling on any dispositive motion and no discovery has been taken.

## BACKGROUND

### A.   Plaintiffs Allege Securities Fraud Based on Target's Corporate Disclosures Disseminated from Minnesota.

Plaintiffs' Amended Complaint ("AC") centers on certain business decisions made in Minnesota, including Target's ESG (environmental, social, and governance) and DEI (diversity, equity, and inclusion) initiatives, specifically its 2023 Pride Collection. (¶¶202-03.) The AC contends that Defendants' statements or omissions on these topics give rise to claims for securities fraud, alleging that various disclosures were false and misleading. (¶¶526, 533, 543.)

Target, the primary Defendant and issuer of the securities and the disclosures at issue, is a Minnesota corporation with its headquarters in Minnesota. (¶36; Ex. 3 at 14.) Target also disseminated the allegedly misleading disclosures—Target's 2021 and 2022 Annual Reports and 2022 and 2023 Proxy Statements—from Minnesota. (*See* Ex. 1 at 75; Ex. 2 at 78.) Like the disclosures, Target's press releases that are identified in the AC were also released from Minnesota, including Target's statement concerning consumer backlash to the 2023 Pride Collection that Plaintiffs allege was misleading ("May 2023 Pride Statement"). (*See, e.g.*, ¶¶12, 80, 248.)

3

### B.   Plaintiffs' Claims Stem from Minnesota-Based Conduct and Involve Minnesota Witnesses.

Plaintiffs contend that the disclosures were misleading because of conduct that allegedly took place in Minnesota concerning Target's 2023 Pride Collection, which Plaintiffs further allege was devised in and coordinated from Target's "HQ" in Minneapolis.  (¶¶202-03 (alleging that a purported Confidential Witness stated that senior executives at Target made 2023 Pride Collection decisions from Target's headquarters in Minneapolis).)

Specifically, Plaintiffs allege that Target's 2021 and 2022 Annual Reports and 2022 and 2023 Proxy Statements (1) failed to sufficiently disclose the risk of a potential boycott from customers with negative reactions to Target's ESG and DEI initiatives and (2) falsely stated that Target's Board of Directors was monitoring risks resulting from the Company's ESG and DEI policies.  (¶4.)

The Individual Defendants, who are (or were) Target's executives and directors, performed the responsibilities relevant to Plaintiffs' claims and Defendants' defenses at Target's Minnesota-based executive offices, which is also where investors can communicate with these directors (Ex. 1 at 76; Ex. 2 at 79).  The AC alleges that Target's CEO Brian Cornell—who signed the corporate disclosures and made other allegedly misleading statements giving rise to this action—lives in Minnesota.  (¶37.)  Those statements were drafted with the assistance of Target employees, who also work, live in, or have substantial ties to Minnesota.  The 2021 and 2022 Annual Reports were reviewed by Target's auditors located in Minnesota.  (Ex. 3 at 36;

Ex. 4 at 36.)  And if investors had questions about Target's 2022 and 2023 Proxy Statements, including its ESG and DEI policies, they were invited to contact the Investor Relations team at Target's Minneapolis office.  (Ex. 1 at 18; Ex. 2 at 18.) Thus, the potential witnesses—the individuals that acted on Target's behalf or whose knowledge is relevant to allegations of falsity and scienter, which are required elements of Plaintiffs' claims—also work, live in, or have substantial ties to Minnesota.

Similarly, Target's ESG and DEI policies were devised, implemented, and overseen from Minnesota.  Regarding the 2023 Pride Collection specifically, Plaintiffs introduce a purported Confidential Witness who contends that Minneapolis-based executives made the decisions, as it was a "big priority for Minneapolis."  (¶202.) According to that Confidential Witness, these executives decided—at Target's "HQ" in Minneapolis—which "merchandise would be included in the 2023 LGBT-Pride Campaign."  (*Id.*)  And the Confidential Witness further asserts that these Minnesota-based "senior executives" instructed stores on how to display that merchandise. (¶203.)

## C.    Defendants' Alleged Conduct Has Minimal Ties with the Middle District of Florida.

This District has minimal ties to the action:  it is where one of the five Plaintiffs is alleged to have received two of the disclosures at issue in this action, and it is where two of the five Plaintiffs are alleged to reside.  (¶¶31-35, 54.)

Importantly, however, this action was originally contrived outside of this District.  On June 6, 2023, America First Legal ("AFL"), a Washington D.C.-based

advocacy group that represents Plaintiffs in this action, served Target in Minnesota with a demand to inspect Target's Minnesota-based books and records, pursuant to Minnesota law. (Ex. 5.) In a press release describing that books and records demand, AFL explained that "Target's 2022 annual report . . . recognizes the serious risk to Target's company's [sic] financial prospects if [Target's] core customer base sours on the corporation" and quoted Target's risk disclosure that "[o]ur continued success is dependent on positive perceptions of Target which, if eroded, could adversely affect our business and our relationships with our guests and team members." (Ex. 6 at 1.) The press release went on to reiterate that "Target has *formally acknowledged* to its shareholders the *significant financial risks* that would come from *eroding positive public perceptions of its brand*." (Ex. 6 at 2 (emphasis added).)

But rather than litigate with Target about these issues in Minnesota, AFL instead filed the Original Complaint in this District, on behalf of just one of the current Plaintiffs, Brian Craig, who resides in the Middle District of Florida. (*See* Dkt. 1 ¶27.) Beyond his residency, Craig alleged that his lawsuit's lone tie to this District was that he received Target's Proxy Statements "in this district." (*Id.* ¶45.)

Defendants moved to dismiss that Original Complaint based on its failure to adequately plead any of the required elements of either of Craig's claims, as well as his lack of standing. (*See generally* Dkt. 37 at 17-18.) As Defendants explained in their briefing on that motion to dismiss, Craig's only alleged purchase of Target stock was *before* the alleged misleading statements, meaning Craig could not have been harmed by any artificial inflation allegedly caused by those statements. (*See id.* at 17-19.) Even

6

setting that deficiency aside, the Original Complaint also failed because none of the alleged statements were materially false or misleading, Craig failed to plead scienter, and Craig failed to adequately allege causation under either of his claims. (*See generally id.* at 19-45.)

In reaction to Defendants' original motion to dismiss, AFL did not attempt to defend the viability of its Original Complaint, but filed the AC, which makes clear that this case should be in Minnesota. The AC added four new Plaintiffs; three of whom made purchases of Target stock after the alleged misstatements. (¶¶32, 34, 35.) In addition, AFL alleged two new categories of misstatements. (¶¶278, 286 (allegedly misleading disclosures of the risk of consumer backlash against ESG and DEI initiatives); ¶¶248, 251, 300 (allegedly misleading statements about Target's reasons for merchandizing changes in response to consumer backlash).) One of those new allegations is that the risk disclosures in Target's 2022 Annual Report failed to warn investors of the risk of consumer backlash against Target's ESG and DEI initiatives. (¶¶284-87.) Yet, these are precisely the *same* risk disclosures that AFL previously declared had "formally acknowledged" the risk of consumer backlash. (*Compare id.*, *with* Ex. 6 at 2.) Moreover, unlike Craig who resides in this District, three of those new Plaintiffs reside a thousand or more miles from this District. Specifically, Inspire Advisors LLC ("Inspire") is based in Idaho,[3] Steven Cook resides in Missouri, and

---

[3] The AC does not allege a residency for Inspire, which is alleged to be the assignee of two unnamed individuals who are also alleged to reside outside of this District and who, in any event, are not parties.

Laura Thompson resides in Illinois. (¶¶33-35.) Notably, Idaho, Missouri, and Illinois are all far closer to Minnesota than they are to the Middle District of Florida. Of the newly added Plaintiffs, only Carol Bowe resides in this jurisdiction. (¶32.)

By joining this action, the three nonresident Plaintiffs (the majority of the five Plaintiffs) have already shown that they are amenable to litigating in a forum hundreds of miles from where they reside.

### D. This Action Overlaps with Another Securities Action Pending in the District of Minnesota, Which Has a Lighter Civil Caseload.

Aspects of this case also overlap with another case that has been pending in the District of Minnesota before this one: *Perez v. Target Corp.*, No. 0:23-cv-00769-PJS-TNL. *Perez*, like this case, is a securities fraud action asserted by purchasers of Target stock. (*Perez v. Target Corp. et al.*, No: 23-cv-769 (D. Minn.), Dkt. 1 ¶171 (hereinafter "*Perez* Compl.").) *Perez* and this case share two key defendants: Target and Cornell. (*Compare Perez* Compl. ¶¶17-18, *with* ¶¶36-37.) And both lawsuits point to some of the same disclosures over a similar time period, including risk factors in Target's 2021 Annual and Quarterly Reports. (*Compare Perez* Compl. ¶¶24, 107, *with* ¶¶278-99.) Both lawsuits also allege that Target and Cornell intentionally misrepresented

---

Public filings and statements by Inspire Advisors LLC, however, reflect that it is organized under the laws of Delaware and has its "[n]ational admin office" in Idaho. Inspire Home Page, https://www.inspireadvisors.com (last visited Jan. 26, 2024); Idaho Sec'y of State Off., https://sosbiz.idaho.gov/search/business (last visited Jan. 26, 2024) (listing Inspire as a Delaware corporation); State of Delaware – Div. of Corps., https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (last visited Jan. 26, 2024) (same). It is the residency of the assignee that is relevant to the transfer analysis. *Elite Advantage, LLC v. Trivest Fun, IV, L.P.*, 2015 WL 4982997, at *10 (S.D. Fla. Aug. 21, 2015) (considering the plaintiff-assignee's residence when considering its choice of forum).

Target's risks related to merchandise (albeit for different reasons) in the Company's public filings. (*Compare Perez* Compl. ¶¶126, 134 *with* ¶¶406, 410.)

Finally, caseload statistics show that the District of Minnesota's caseload is lighter than the Middle District of Florida's based on volume of civil cases per judge and weighted filings per judge. Whereas the District of Minnesota has a case volume of 546 civil cases per judge, the Middle District of Florida has 611.[4] Further, the District of Minnesota has 547 weighted filings per judge while the Middle District of Florida has 650.[5]

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), courts can, and often do, transfer actions to another district where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." This is a critical tool in a district court's arsenal; it empowers a court to avoid wasting "time, energy, and money" by "protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960).

In ruling on a transfer motion, courts first must determine whether the action "might have been brought"—i.e., whether venue is proper—in the transferee district. *Mitchell v. Edwards*, 2009 WL 10667876, at *1 (M.D. Fla. Aug. 21, 2009) (quoting 28 U.S.C. § 1404(a)). If so, courts then weigh nine nonexclusive factors:

---

[4] *Management Statistics for United States District Courts 2023*, U.S. Courts (Sept. 30, 2023), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1.
[5] *Id.*

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Although no factor is dispositive (nor must all even be considered), the "convenience of the witnesses" and "the locus of operative facts" are the two factors that weigh most heavily in the analysis. *See Fairstein v. Netflix*, 2020 WL 5701767, at *7 (M.D. Fla. Sept. 4, 2020) (Badalamenti, J.); *Est. of Brooks v. United States*, 2020 WL 4923639, at *5 (S.D. Fla. Jan. 22, 2020).

Under this analysis, securities cases filed in districts other than where a corporation is headquartered and from which public statements are made—like this case—are routinely transferred. That's because the pertinent facts of these cases—the SEC disclosures—are almost always issued from the company's headquarters. *Yes Lighting, LLC v. PSG Energy Grp., LLC*, 2019 WL 13225114, at *3 (S.D. Fla. Sept. 19, 2019) ("Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." (quoting *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006))). So while there is "no per se rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered . . . [,]as a practical matter, such transfers are routine." *Hanger Orthopedic*, 418 F. Supp. 2d at 168 (collecting

10

cases); *see In re 3M Co.*, 2020 WL 13924735, at *2 (3d Cir. Nov. 18, 2020) (directing district court to transfer securities fraud case to Minnesota because plaintiffs' "[c]laims based on false statements or omissions ar[o]se in the district" where the statements were issued).

## ARGUMENT

As set forth below, the applicable factors overwhelmingly favor transfer.

## I.    TRANSFER TO THE DISTRICT OF MINNESOTA IS APPROPRIATE BECAUSE THIS ACTION COULD HAVE ORIGINALLY BEEN BROUGHT THERE

As an initial matter, transfer to the District of Minnesota is proper because the threshold question—whether the action could originally have been brought in Minnesota—is easily satisfied here.  *Mitchell*, 2009 WL 10667876, at *1 (quoting 28 U.S.C. § 1404(a)).  That is because, under the Exchange Act, a shareholder can sue in any district "wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.  It is undisputed that Defendant Target is a Minnesota corporation headquartered in Minneapolis.  (¶36.)  And Plaintiffs allege that all of the Individual Defendants reside in Minnesota or were directors when the 2022 or 2023 Proxy Statements, or the 2021 and 2022 Annual Reports were disseminated from Minnesota. (¶¶37-50.)  Accordingly, venue is proper in the District of Minnesota.

## II.   THE DISTRICT OF MINNESOTA IS A MORE CONVENIENT VENUE AND THE INTEREST OF JUSTICE WILL BE SERVED BY TRANSFERRING THIS ACTION THERE

Because venue is proper in the District of Minnesota, the Court should next turn to the nine nonexclusive factors "and decide whether, on balance, a transfer would

11

serve the convenience of parties and witnesses; and otherwise promote the interest of justice." *Fairstein*, 2020 WL 5701767, at *6 (quoting 28 U.S.C. §1404(a)).

Here, those factors powerfully favor transferring this case to the District of Minnesota for four reasons. *First*, litigating in Minnesota would be more convenient for the likely witnesses—Target employees who work at Target's Minnesota headquarters. (*Infra* §II.A.) *Second*, the relevant acts here—the drafting and dissemination of the Annual Reports and Proxy Statements as well as Target's business decisions related to the 2023 Pride Collection—took place at and out of Target's headquarters in Minnesota. (*Infra* §II.B.) *Third*, Plaintiffs' choice of forum is entitled to little weight since the majority of Plaintiffs reside outside this District and this District only has a tenuous tie with the events underlying this cause of action. (*Infra* §II.C.) *Finally*, the interest of justice favors transfer to the District of Minnesota because it has a relatively lighter load of civil cases and weighted filings per judge, and a Minnesota federal court is already adjudicating some of the same Target disclosures at issue here.[6] (*Infra* §II.D.) Accordingly, this Court would serve both public and private interests by transferring this case to the District of Minnesota.

### A. The District of Minnesota Would Be More Convenient for Witnesses.

Starting with "one of the most—if not the most—important factors," the "convenience of the witnesses" weighs heavily in favor of transfer because virtually all of the witnesses are located in Minnesota. *Fairstein*, 2020 WL 5701767, at *7; *see*

---

[6] *See Management Statistics for United States District Courts 2023*, supra note 4.

*Cunningham v. Sw. Airlines*, 548 F. Supp. 3d 1169, 1173-74 (M.D. Fla. 2021) (permitting transfer to Puerto Rico because that forum is "most convenient for the majority of the witnesses"). When considering this factor, this Court explained that transfer away from the initial forum is particularly appropriate where "almost all" witnesses are located in an out-of-state forum. *Fairstein*, 2020 WL 5701767, at *7; *see also Koehring v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963) (finding transfer appropriate because "[m]ost of the witnesses . . . reside at or near the plant site," which was located in the transferee district).[7]

Here, almost all of the witnesses are in Minnesota. Plaintiffs allege that Target's "decisions about the content of the 2023 LGBT-Pride Campaign" were made by senior executives in Minneapolis. (¶¶202, 406.) And because they allege securities fraud claims, the "key witnesses" are those senior Target officers and employees "who participated in drafting or distributing" the Company's Annual Reports, Proxy Statements, public statements, and DEI programs. *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003); (*see* ¶¶278-99, 318-39, 372, 384, 473). Those senior executives and employees live near, work out of, or regularly travel to Target's headquarters in Minneapolis. *See In re USA Techs., Inc. Sec. Litig.*, 2019 WL 4785780, at *3 (D.N.J. Sept. 30, 2019). Further, if investors are concerned about these statements, Target directs them to contact its Investor Relations team in Minnesota.

---

[7] The Eleventh Circuit adopted, as binding precedent, all Fifth Circuit decisions published on or prior to September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-10 (11th Cir. 1981).

(Ex. 1 at 18; Ex. 2 at 18.)  Thus, like *Fairstein*, none of the crucial witnesses will be in the Middle District of Florida; yet virtually all can be found in Minnesota.  *See also Suomen Colorize Oy v. Dish Network*, 801 F. Supp. 2d 1334, 1338 (M.D. Fla. 2011) (transferring case because plaintiff was "unaware of any witnesses material to this case that are located in" this District and did "not dispute that many key witnesses [were] located in" the transferee district).  As a result, transfer to the District of Minnesota indisputably serves the convenience of these individuals who are likely to be called as witnesses.  *Cunningham*, 548 F. Supp. 3d at 1173-74 (transferring case because "[e]xcept for [plaintiff] . . . the relevant witnesses work[ed] and live[d] in [the transferee district]. . . [so] [i]t would certainly be most convenient for the majority of witnesses if the suit occurred in the district where they reside and where the record evidence exists"); *see also Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1352-53 (M.D. Fla. 1999) (finding that when defendant's key employee witnesses are located in transferee district, transfer is warranted because plaintiff incurs less inconvenience and expense in the transferee district than defendant incurs in the transferor district); *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002) (same).

Relatedly, since many of these witnesses are located in Minnesota, transfer there would ensure "the availability of process to compel the attendance of unwilling witnesses" at a potential trial—an additional factor favoring transfer.  *Manuel*, 430 F.3d at 1135 n.1; *see Soc. Language Processing, Inc. v. Ott*, 2013 WL 1442168, at *4 (S.D. Fla.

Apr. 9, 2013) (noting that convenience of the witnesses and "the Court's ability to compel process are generally given substantial weight in transfer decisions").

**B.    The District of Minnesota Is Where the Conduct at Issue Occurred**.

Turning to the other "key factor in determining a motion to transfer venue," the "locus of operative facts" counsels in favor of transfer to the District of Minnesota. *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1262 (N.D. Fla. 2019).  Notwithstanding Plaintiffs' choice of forum, courts routinely transfer cases "where the operative facts are concentrated in a specific district other than the district in which plaintiff has sued." *Ravenwoods Inv. Co., L.P. v. Bishop Cap. Corp.*, 2005 WL 236440, at *5 (S.D.N.Y. Feb. 1, 2005) (quotation omitted); *see Baker v. Major League Baseball Props., Inc.*, 2009 WL 1098482, at *3 (N.D. Fla. Apr. 22, 2009) (transferring case because "all of the relevant acts and/or omissions alleged by plaintiff" occurred outside Florida).  And in securities cases, those operative facts—the alleged misrepresentations and omissions— "occur in the district where [the disclosures] are transmitted or withheld, not where they are received." *Hanger Orthopedic*, 418 F. Supp 2d. at 169 (quotation omitted).  In other words, a company's allegedly fraudulent disclosures "naturally . . . emanate from [the Company's] headquarters." *Huntley v. Chi. Bd. of Options Exch.*, 132 F. Supp. 3d 1370, 1374 (N.D. Ga. 2015).  The law is clear; it does not matter that one plaintiff read some of Target's SEC filings in this District (or that other Target shareholders presumably read the same disclosures in every other judicial district).  What matters is the district from which Target's statements came.  Here, that is Minnesota and only Minnesota.

For instance, in *Ravenwoods*, the court transferred the plaintiffs' securities-disclosure claims from New York to Wyoming because the defendants' proxy statements "were drafted in and issued from Wyoming" and were merely mailed to New York. 2005 WL 236440, at *5. Thus, "the center of gravity of the case" plainly resided outside of plaintiff's choice of forum, New York. *Id.* at *6; *see also Huntley*, 132 F. Supp. 3d at 1374 (transferring securities-disclosure claims to Illinois because "it is plain that the facts at issue are centrally tied to Illinois" where defendants' headquarters were located).

Similarly, this case's center of gravity lies in Minnesota—not within the Middle District of Florida—since that is where Target issued the 2021 and 2022 Annual Reports, 2022 and 2023 Proxy Statements, and the May 2023 Pride Statement. (*See* ¶¶248, 278-99, 301, 318-39.) Under *Ravenwoods*, that alone is a powerful reason to transfer the case to Minnesota.

But that's not all. The AC is also littered with allegations of Defendants' conduct that occurred in Minnesota. To name just a few, Minnesota is the state where Plaintiffs themselves allege that Target: (1) promoted certain ESG and DEI policies (¶77); (2) "rebuffed" requests "to rescind its transgender bathroom policy" (¶194); (3) "'push[ed] the envelope' on social issues" (¶406); and (4) was subject to protests over its stance on North Carolina's transgender-bathroom legislation (¶174).[8]   And if

_____

[8] Additionally, the documents relevant to these actions are located at Target's headquarters in Minneapolis. Even though these documents could potentially be transferred to this District, "the fact

16

investors were concerned about any of these policies, they were directed to contact Target's Investor Relations team in Minnesota.  (Ex. 1 at 18; Ex. 2 at 18.)  Tellingly, Plaintiffs' own Confidential Witness claims that senior management decisions about the 2023 Pride Collection were made from Minnesota, including decisions about where merchandise should be located.  (¶202.)  Thus, Plaintiffs' challenged conduct is intimately connected with Minnesota.  *Clement v. Pehar*, 575 F. Supp. 436, 445 (N.D. Ga. 1983) (transferring case to the district of company's headquarters, where it had drafted the securities-offering documents).

The only possible factual connection this case has to the Middle District of Florida is that Craig and Bowe reside in this District, and Craig allegedly received Target's Proxy Statements in this District.  (¶54.)  But in a securities action, this tenuous tie is insufficient to shift the center of gravity of this case from Minnesota to Florida.  *See Ravenwoods*, 2005 WL 236440, at *6 (holding that the mailing of proxy statements to shareholders residing in the transferor district did not shift the center of gravity of the case away from the transferee district).

Since Target's headquarters are in Minnesota and the alleged misrepresentations and omissions, which are at the heart of Plaintiffs' case, all occurred in Minnesota, the District of Minnesota is, by far, the more convenient forum.  *See, e.g.*, *Huntley*, 132 F. Supp. 3d at 1374 (granting transfer where "almost

---

that the documents are all currently located in [Minnesota] favors transfer." *In re Stillwater Mining Co.*, 2003 WL 21087953, at *5.

every important fact in this case is likely to be connected in a significant way to that state"); *Seinfeld v. Bartz*, 2001 WL 611295, at *3 (S.D.N.Y. June 5, 2001) (transferring case to the Northern District of California where "virtually all of the events underlying this action occurred" including the defendants' "drafting and approval of the proxy statement, and the dissemination of the statement").

### C.   One Plaintiff's Decision to File in This District Should Be Given Little Weight.

Plaintiff Craig's decision to file suit in the Middle District of Florida is outweighed by the compelling reasons to transfer this action to the District of Minnesota.  Although plaintiffs' choice of forum is generally given deference, this Court has correctly recognized that the Eleventh Circuit gives "less weight to this factor if the facts giving rise to the claim occurred primarily outside the chosen forum." *Fairstein*, 2020 WL 5701767, at *10 (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016)); *see also Baker*, 2009 WL 1098482, at *3 ("[A] plaintiff's choice of forum may properly be accorded lesser weight where the forum lacks a significant connection with the underlying claim or operative facts." (citations omitted)).  And plaintiffs' choice of forum is given even less deference when one or more of the plaintiffs resides outside the chosen forum.  *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006).

Here, as already discussed, virtually all the events underlying this action occurred in Minnesota, and there is scant connection to the Middle District of Florida. To be sure, Plaintiff Craig resides in and chose to file in this District.  But his residency

does not stand in the way of transfer because his (and his co-Plaintiffs') claims are premised on conduct that occurred elsewhere. *Awad v. Mayorkas*, 2022 WL 1215521, at *3 (M.D. Fla. Apr. 7, 2022) (finding transfer appropriate because plaintiff's residency in the Middle District of Florida was her only connection to this chosen forum); *Austin v. Invs. Title Ins. Co.*, 2009 WL 10670798, at *5 (M.D. Fla. June 24, 2009) (granting transfer because "other than Plaintiff's residence in this district . . . there is simply no other connection or compelling interest of this district" in plaintiff's cause of action); *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 11 (S.D. Fla. 1985) (transferring because only the plaintiff resided in the district, while defendant and its employees resided in Connecticut).

Even more so here, Plaintiffs' choice of forum is "entitled to little deference" since several Plaintiffs reside outside this District. *Fuji Photo Film Co.*, 415 F. Supp. 2d at 376 (internal quotation marks omitted). Because Craig lacked standing, other Plaintiffs have now been added to this action—the majority of whom reside far from this District. Specifically, Plaintiffs Inspire, Cook, and Thompson reside in Idaho, Missouri, and Illinois, respectively. (¶¶33-35; *supra*, at 7-8.) As a result, Plaintiff Craig's initial choice of forum carries little weight in this motion-to-transfer analysis. *See Fairstein*, 2020 WL 5701767, at *10 (affording the plaintiff's choice of forum "little weight" because the "primary locus of operative facts" was outside of Florida even though the plaintiff currently resided in the Middle District of Florida).

Relatedly, the majority of Plaintiffs, by joining this action outside their states of residency, have already shown they have the financial means and wherewithal to

litigate in a foreign jurisdiction.  *See Ravenwoods*, 2005 WL 236440, at * 7 (noting that if neither party asserts that it lacks "the means to litigate [the] case in one or the other forum," the parties' relative financial means are neutral).  That is even more true for Inspire, which is an asset-management firm that both offers financial advising services and employs financial advisors in Minnesota, as well as manages its own ETF funds.[9]

### D.    Trial Efficiency and the Interest of Justice Favor Transfer.

Finally, by transferring this case to Minnesota, this Court would promote trial efficiency and the interest of justice.  In weighing this factor, courts often consider "the relative interests of the two forum states in the litigation, relative hardship of the parties, and questions of judicial economy."  *Fairstein*, 2020 WL 5701767, at *10 (quotation omitted).  All three considerations underscore that transfer is appropriate.

*First*, Minnesota has a stronger interest in this litigation because the activity giving rise to this action occurred in Minnesota and both the witnesses and the evidence are located in Minnesota.  This consideration "weighs strongly in favor of transfer" to the District of Minnesota.  *Huntley*, 132 F. Supp. 3d at 1376; *see also Trump v. Simon & Schuster, Inc.*, 2023 WL 5000572, at *8 (N.D. Fla. Aug. 4, 2023) (concluding that the public interest favored transfer because "none of the pertinent events" occurred in Florida); *Ravenwoods*, 2005 WL 236440, at *9 (holding that an action

---

[9] *See* Inspire Advisors Minn., https://www.inspireadvisorsmn.com (last visited Jan. 26, 2024); *Financial Advisors*, Inspire Advisors Minn., https://www.inspireadvisors.com/financial-advisors (last visited Jan. 26, 2024) (advertising that two of Inspire's "Founding Advisor Partners" are located in Minnesota).

should be transferred to Wyoming for trial efficiency and in the interest of justice
where the "center of gravity" of the litigation was in Wyoming).

*Second*, as explained above, transfer to Minnesota would ease the hardship on
the parties and nonparties, as virtually all of the key witnesses are likely located in
Minnesota; thus, a transfer reduces expense and burden. (*See supra*, at 4.)

*Third*, a transfer to the District of Minnesota promotes judicial economy and
conserves resources. As discussed, the *Perez* plaintiffs have already filed a securities
fraud lawsuit against Target in the District of Minnesota, where Target maintains its
headquarters. Both that lawsuit and this case will require a court to (i) analyze some
of the same Target disclosures, including the 2021 Annual Report; (ii) review
statements made by some of the same defendants; and (iii) determine whether such
alleged misstatements impacted Target's stock price. (*Compare Perez* Compl. ¶¶107-
09, 126, 134, 151, *with* ¶¶278-99, 428-33.) Rather than have two federal districts
independently take on these burdens, this Court can "streamline[]" the "resources
required to adjudicate this case . . . with the case[] already pending" in the District of
Minnesota. *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d. 1271, 1278 (S.D.
Fla. 2011) (concluding that transfer would conserve judicial resources where some
factual background is common to both cases, even if there is no direct overlap in
claims).

Relatedly, public considerations favor transfer because the District of
Minnesota faces a lighter caseload based on weighted filings and civil cases per judge
than the Middle District of Florida. *See DeMoss v. First Artists Prod. Co.*, 571 F. Supp.

409, 414 (N.D. Ohio 1983) (noting that an additional reason to transfer was that the transferee district had fewer cases per judgeship). To compare, judges in this District are administering (on average) 65 more cases and 103 more filings than their counterparts in the District of Minnesota.[10] *See Morrissey v. Subaru of Am., Inc.*, 2015 WL 9583278, at *4 (S.D. Fla. Dec. 31, 2015) (relative docket congestion favored transfer even where transferee district had a "heavy case load," as transferor district was still busier). Further, this District is the 11th busiest district nationwide by weighted filings per judge, while the District of Minnesota is only the 21st busiest. This District's heavier caseload favors transfer to the District of Minnesota.

And now is the best time to transfer, as this Court has "yet to make a ruling on any dispositive motion" and discovery has not begun. *Huntley*, 132 F. Supp. 3d at 1376. In other words, this Court has incurred no "sunk costs" with this action. *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order transferring this action to the District of Minnesota. If it does so, the Court need not decide Defendants' concurrently filed motion to dismiss, which can be decided by the transferee court in Minnesota.

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), Defense counsel have conferred with counsel for Plaintiffs by telephone; Plaintiffs oppose the relief requested in this motion.

---

[10] *See Management Statistics for United States District Courts 2023*, *supra* note 4.

22

Date:  January 26, 2024                              Respectfully submitted,


Traci T. McKee                                       /s/ Sandra C. Goldstein
FAEGRE DRINKER BIDDLE &                               Sandra C. Goldstein, P.C. (*pro hac vice*)
REATH LLP                                            Alexander J. Rodney (*pro hac vice*)
1500 Jackson Street, Suite 201                       Jacob M. Rae (*pro hac vice*)
Fort Myers, Florida 33901                            Ashley P. Grolig (*pro hac vice*)
Telephone:  (239) 286-6910                           KIRKLAND & ELLIS LLP
traci.mckee@faegredrinker.com                        601 Lexington Avenue
                                                     New York, NY 10022
Jeffrey P. Justman (*pro hac vice*)                  Telephone:  (212) 446-4779
FAEGRE DRINKER BIDDLE &                               sandra.goldstein@kirkland.com
REATH LLP                                            alexander.rodney@kirkland.com
2200 Wells Fargo Center                              jacob.rae@kirkland.com
90 South 7th Street                                  ashley.grolig@kirkland.com
Minneapolis, Minnesota 55402
Telephone:  (612) 766-7000
jeff.justman@faegredrinker.com


Sandra Grannum (*pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com


*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4779
sandra.goldstein@kirkland.com