In The United States District Court
Middle District of Florida
Ft. Myers Division

Brian Craig, Carol Bowe, Inspire
Advisors, LLC, Steven Cook, and Laura
Thompson,

    *Plaintiffs*,

    v.

Target Corporation, Brian C. Cornell,
David P. Abney, Douglas M. Baker, Jr.,
George S. Barrett, Gail K. Boudreaux,
Robert L. Edwards, Melanie L. Healey,
Donald R. Knauss, Christine A. Leahy,
Monica C. Lozano, Grace Puma, Derica
W. Rice, and Dmitri L. Stockton,

    *Defendants*.

No. 2:23-cv-00599-JLB-KCD
Honorable John Badalamenti

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

## TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

LEGAL STANDARD ......................................................................... 3

ARGUMENT ...................................................................................... 4

    I.     Plaintiffs' Choice of Forum Is Entitled to Extraordinary Weight, Especially in Securities Suits .................................................. 5

    II.    Target Faces No Inconvenience of Witnesses or Discovery in This District ........................................................................................ 9

    III.   Target Overplays the Alleged Connections Between Minnesota—and Ignores Its Florida and MDFL Connections ......................................... 14

    IV.   The Balance of Burdens Strongly Favors Plaintiffs ............................... 17

    V.    Court Congestion Favors Keeping This Case ........................................ 18

    VI.   The Pending Suit Against Target in the District of Minnesota Has Nothing to Do with the Allegations Made Here ................................... 19

    VII.  Target Loses All Remaining Factors .................................................... 20

CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. Davis*,
   2018 WL 11448855 (N.D. Ala. Sept. 13, 2018) ................................................8

*Acrotube, Inc. v. J.K. Fin. Grp., Inc.*,
   653 F. Supp. 470 (N.D. Ga. 1987) ....................................................................8

*Alcantarilla v. State Farm Mut. Auto. Ins. Co.*,
   2015 WL 8785007 (W.D. Pa. Dec. 15, 2015) ..................................................17

*Angel Jet Servs., L.L.C. v. Red Dot Bldg. Sys.*,
   2010 WL 481420, at *3 (D. Ariz. Feb. 8, 2010) ................................................5

*Combs v. Fla. Dep't of Corr.*,
   461 F. Supp. 3d 1203 (N.D. Fla. 2020) ..........................................................20

*Dekle v. Glob. Digit. Sols., Inc.*,
   2015 WL 3562412 (S.D. Ala. June 5, 2015) ......................................................8

*Deltona Transformer Corp. v. Noco Co.*,
   2019 WL 5390476 (M.D. Fla. Sept. 16, 2019) ................................................10

*Demere v. Newlin*,
   2005 WL 8156280 (S.D. Ga. Aug. 30, 2005) ....................................................8

*Duckworth v. Med. Electro-Therapeutics, Inc.*,
   768 F. Supp. 822 (S.D. Ga. 1991) ....................................................................8

*Halbert v. Credit Suisse AG*,
   358 F. Supp. 3d 1283 (N.D. Ala. 2018) ......................................................8, 10

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
   418 F. Supp. 2d 164 (E.D.N.Y. 2006) ............................................................13

*Kammona v. Onteco Corp.*,
   587 F. App'x 575 (11th Cir. 2014) ....................................................................7

*In re Laidlaw Sec. Litig.*,
   1991 WL 170837 (E.D. Pa. Aug. 27, 1991) ......................................................8

*Lemberger v. Westinghouse Elec. Corp.*,
   1976 WL 834 (E.D.N.Y. Nov. 1, 1976) .........................................................6, 8

*Long v. Sports44.com, Inc.*,
   2007 WL 3072405 (M.D. Fla. Oct. 19, 2007) ..................................................8

*McIlvaine v. Arthrocare Corp.*,
   2008 WL 11332000 (S.D. Fla. Oct. 28, 2008)...............................................6, 9

*Mem'l Hermann Hosp. Sys. v. Boyd Gaming Corp. Percs Plan*,
   2007 WL 624334 (S.D. Tex. Feb. 22, 2007) ....................................................5

*Micheel v. Haralson*,
   586 F. Supp. 169 (E.D. Pa. 1983) ....................................................................8

*Oller v. Ford Motor Co.*,
   1994 WL 143017 (M.D. Fla. Mar. 30, 1994)..............................................17, 18

*Robinson v. Giamarco & Bill, P.C.*,
   74 F.3d 253 (11th Cir. 1996) ......................................................................3, 5

*S-G Sec., Inc. v. Fuqua Inv. Co.*,
   466 F. Supp. 1114 (D. Mass. 1978) ..................................................................7

*SEC v. Captain Crab, Inc.*,
   655 F. Supp. 615 (S.D.N.Y. 1986)....................................................................7

*SEC v. Elecs. Warehouse, Inc.*,
   689 F. Supp. 53 (D. Conn. 1988) .....................................................................7

*SEC v. Taronis Techs., Inc.*,
   2023 WL 4134000 (M.D. Fla. June 22, 2023) ........................3, 4, 5, 9, 17, 19, 20

*Serefex Corp. v. Hickman Holdings, LP*,
   695 F. Supp. 2d 1331 (M.D. Fla. 2010)............................................................8

*Serrano v. A Plus Painting, LLC*,
   2015 WL 13805065 (M.D. Fla. Apr. 28, 2015) .................................................5

*Smith v. Costco Wholesale Corp.*,
   2021 WL 5114494 (M.D. Fla. Nov. 3, 2021)........................................10, 11, 12

*Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*,
   761 F. Supp. 2d 1322 (M.D. Fla. 2010)...........................................................13

*Weintraub v. Advanced Corr. Healthcare, Inc.*,
   161 F. Supp. 3d 1272 (N.D. Ga. 2015) ...........................................................10

**Statutes**

15 U.S.C. § 78aa........................................................................................6

28 U.S.C. § 1404..................................................................3, 5, 14, 17, 20

iv

**Other Authorities**

Nick Halter, *Target Calls Employees Back to Corporate Headquarters Quarterly in 2024*, Axios Twin Cities (Dec. 14, 2023), https://www.axios.com/local/twin-cities/2023/12/14/target-office-corporate-workers-downtown ............................................................... 12

*Financial Highlights*, Target, https://corporate.target.com/investors/annual/2022-annual-report/financials/financial-highlights ............................. 17

*Florida Store Directory*, Target, https://www.target.com/store-locator/store-directory/florida .................................................................. 16

*Grace Puma*, Simon & Schuster, https://www.simonandschuster.com/authors/Grace-Puma/198756173 ................................................... 11

*Minnesota Store Directory*, Target, https://www.target.com/store-locator/store-directory/minnesota .............................................................. 16

Notice of Annual Meeting of Shareholders (2020), https://corporate.target.com/getmedia/fefd347e-c260-4d91-b8ef-43ed9759b0cf/Target_Proxy-Statement_2020.PDF; ....................................... 15

Notice of Annual Meeting of Shareholders (2021), https://corporate.target.com/getmedia/b5c20d46-be59-4358-b3f5-f6fc0a608133/Target_Proxy-Statement_2021.PDF; ....................................... 15

Notice of Annual Meeting of Shareholders (2022), https://corporate.target.com/getmedia/a5039e64-758c-4f33-a972-ff7255813e7a/Target_Proxy-Statement_2022.pdf ............................................ 15

Notice of Annual Meeting of Shareholders (2023), https://corporate.target.com/getmedia/86944c9b-857d-426b-a6cf-19280989cc77/2023-Proxy-Statement_Target-Corporation.pdf ....................... 15

*Sales Per Capita,* Target, https://corporate.target.com/investors/annual/2022-annual-report/financials/sales-per-capita (last visited Feb. 29, 2024)..................................................................................... 16

*United States District Courts – National Judicial Caseload Profile*, US Courts................. 18

## INTRODUCTION

In their Motion to Transfer (ECF No. 68 ("Mot.")), Defendants (collectively, "Target") try to give the impression that Target has been hauled into a far-away jurisdiction with which it has little connection and which will cause it to incur severe discovery burdens. Target demands that Plaintiffs—consisting primarily of Florida residents with relatively low-dollar stock holdings in Target—be compelled to find additional lawyers and litigate their entire case in Minnesota instead, where none of them reside.

Target seeks this relief even though just as many parties to this case reside *in this District* as reside in the entire State of Minnesota. And Target has more stores *in this District* than in the entire State of Minnesota—a relevant fact given that the allegations here include Target's decision to selectively move Pride Campaign displays "in Southern states" because of serious backlash. ECF No. 52, ¶ 260. Further, Target directed its violative proxy statements *into this District* for Lead Plaintiff Brian Craig and Plaintiff Carol Bowe. Plus, nearly all of Target's Board of Directors live *outside* Minnesota; in fact, there are almost as many Target Directors who reside *in this District* as reside in the entire State of Minnesota. And as for discovery and depositions, electronic document transfers and remote video depositions eliminate the alleged burdens on those sparingly few Defendants who actually reside in Minnesota.

Moreover, Target *declined* to move to transfer the original Complaint in this case, which named the same Defendants and whose claims would have almost the same universe of underlying discovery as the claims now before the Court. Target was

perfectly fine shouldering the alleged burdens of discovery while defending this case in this District—and those burdens have not meaningfully changed since the original Complaint. To be sure, several new Plaintiffs were added, but most of them have Florida connections, as detailed in the Amended Complaint, and their addition barely changes the universe of underlying discovery.

Yet suddenly Target claims that discovery here would be an unbearable burden such that it overcomes the extraordinarily strong preference for Plaintiffs' choice of venue. It seems Target has realized the strength of the Amended Complaint and now wants out of this District. But that is not a valid basis for transfer.

Target even resorts to arguing that transfer is warranted so this case can be heard alongside a pending case in Minnesota about whether Target kept its stores' shelves fully stocked because of pandemic supply-chain issues—which has no overlap with the allegations here.

Target was right the first time: transfer is entirely unwarranted in this case. Numerous Plaintiffs are at home in this District, where Target has many connections of its own. The alleged injurious acts also occurred in this District for those Plaintiffs. And advances in electronic discovery—including video depositions and electronic document productions—mean there is little-to-no difference in the *actual* burden on Target in conducting discovery in this district vs. Minnesota.

Target's venue theory largely boils down to the idea that securities lawsuits "almost always" should be heard in the company's home district because that is where the company is headquartered. Mot.1. But Congress went out of its way in the

Exchange Act to ensure that companies could be sued for securities violations in nearly every district in the country—a goal that would be completely eviscerated if these cases just inevitably end up back in the company's home district, as Target insists. Congress's goal was to ensure that plaintiffs would not have to venture to the company's home turf. Plaintiffs' choice of forum is always entitled to great weight, but in the context of securities actions it is even greater.

The Court should deny the Motion to Transfer.

## LEGAL STANDARD

"'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Accordingly, the party seeking transfer must "'make a convincing showing of the right to transfer.'" *SEC v. Taronis Techs., Inc.*, 2023 WL 4134000, at *4 (M.D. Fla. June 22, 2023) (Barber, J.) (denying motion to transfer). Accordingly, "unless there is 'a clear difference in convenience, the plaintiff's choice of forum is determinative.'" *Id.*

Courts look at numerous factors when deciding whether to transfer an action pursuant to 28 U.S.C. § 1404. Chief among them is the plaintiffs' choice of forum. *Taronis*, 2023 WL 4134000, at *2 n.4 (collecting authorities). Other relevant factors can include: "the convenience of the parties and of the witnesses; the availability of process to compel the presence of unwilling witnesses; the cost of obtaining the presence of witnesses; the relative ease of access to sources of proof; the location of relevant documents; the locus of operative facts; the financial ability to bear the cost

of the change and relative means of the parties; a forum's familiarity with the governing law; trial efficiency and the interest of justice, based on the totality of the circumstances; the administrative difficulties flowing from court congestion; the local interest in having localized controversies determined at home; and any other practical problems that would make trial of the case easy, expeditious, and inexpensive." *Id.*

## ARGUMENT

As a threshold matter, Plaintiffs renew their argument that the Court should not rule on the Motion to Transfer until after the pending Motion to Dismiss is resolved, pursuant to PSLRA's stay provision and the stay this Court already entered. *See* ECF Nos. 73, 79. It makes especially good sense to defer ruling on Target's Motion to Transfer—which focuses overwhelmingly on the supposed burdens of discovery—until after the Court has concluded whether the case will actually proceed past Target's pending Motion to Dismiss (i.e., until the Court determines whether there will actually be discovery).

When the Court does reach the Motion to Transfer, however, it should be denied. Numerous Plaintiffs have sued in their home State and home District. That choice is entitled to extraordinary deference especially in the context of the Exchange Act, and Target cannot overcome that presumption by claiming—for the very first time nearly six months into this case—that litigating in this District would be so burdensome that a multi-billion-dollar company should be able to force Plaintiffs to find additional lawyers and litigate this entire action in Minnesota. As Judge Barber has explained in the context of an Exchange Act suit, "'Ultimately, transfer can only

be granted where the balance of convenience of the parties *strongly* favors the defendant.'" *Taronis*, 2023 WL 4134000, at *2 (emphasis in original). Target cannot satisfy that burden.

## I.    Plaintiffs' Choice of Forum Is Entitled to Extraordinary Weight, Especially in Securities Suits.

Under 28 U.S.C. § 1404, Plaintiffs' choice of forum is given outsized weight, *see Robinson*, 74 F.3d at 260, especially when some of them have sued in their "'home forum,'" *Serrano v. A Plus Painting, LLC*, 2015 WL 13805065, at *1 (M.D. Fla. Apr. 28, 2015).

There are five named Plaintiffs. Lead Plaintiff Brian Craig brought this action in his home District and Division, ECF No. 52, ¶ 31, which is also where he "received and reviewed the violative proxy statements," *id.* ¶ 54.[1] Plaintiff Carol Bowe is likewise at home in this District. *Id.* ¶ 32. That means 40% of Plaintiffs reside in this District. Further, Plaintiff Inspire Advisors is the assignee of two of its clients' claims, both of whom also reside in Florida. *Id.* ¶ 33. Caselaw confirms that "'[b]ecause the assignee stands in the shoes of the assignor, the assignee accepts the assignor's location for venue purposes.'" *Mem'l Hermann Hosp. Sys. v. Boyd Gaming Corp. Percs Plan*, 2007 WL 624334, at *4 (S.D. Tex. Feb. 22, 2007); *see also Angel Jet Servs., L.L.C. v. Red Dot Bldg. Sys.'s Emp. Benefit Plan*, 2010 WL 481420, at *3 (D. Ariz. Feb. 8, 2010) (collecting

---

[1] At one point, Target's Motion to Transfer misleadingly suggests that Craig's venue should be discounted because he supposedly "lacked standing" in the original complaint, Mot.19, but to be clear: Target's Motion to Dismiss the Amended Complaint does *not* assert that Craig lacks standing, and accordingly his residence in this District and the relevant underlying Exchange Act violations that occurred here cannot be discounted.

authorities).[2] Thus, 60% of Plaintiffs have strong Florida ties. By contrast, no Plaintiff resides in Minnesota nor took any relevant action in Minnesota.

Plaintiffs' choice of forum is entitled to "especially" strong weight "in Securities [Exchange] Act cases where Congress established a statutory policy of affording plaintiffs the broadest possible forum choice." *McIlvaine v. Arthrocare Corp.*, 2008 WL 11332000, at *1 (S.D. Fla. Oct. 28, 2008).

The Exchange Act—pursuant to which Plaintiffs bring their claims here— allows for venue in any "district wherein any act or transaction constituting the violation occurred," 15 U.S.C. § 78aa(a), which is broadly defined. Courts have noted that the violation can cover anything from "if a single press release is disseminated through a newspaper or over the Dow-Jones board tape, or if a single telephone call is made from a district," or "where a single misleading proxy has been mailed to one shareholder who resides in a district." *Lemberger v. Westinghouse Elec. Corp.*, 1976 WL 834, at *2 (E.D.N.Y. Nov. 1, 1976) (cleaned up) (collecting cases).

The Exchange Act then also authorizes *nationwide* personal jurisdiction over the defendant company. 15 U.S.C. § 78aa(a). "[T]his nationwide service-of-process provision grants district courts nationwide personal jurisdiction over any defendant

---

[2] The Motion to Transfer cites one case that it claims stands for the opposite rule, Mot.8 n.3, but that case did not actually engage in any analysis regarding whether the assignee's or assignor's residence is what matters; at most, it simply considered the assignee's residence without any further analysis. Meanwhile, there are plenty of cases making clear that it is the assignor's location that matters for venue purpose, as cited above.

that has minimum contacts with the United States," rather than with a specific state or district. *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579–80 (11th Cir. 2014).

Because of these provisions, Plaintiffs' choice of forum is "particularly strong in an action brought under the Securities Exchange Act since the venue provision of the Act is designed to serve the underlying federal policy of allowing the plaintiff the widest possible choice of forums." *S-G Sec., Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1122 (D. Mass. 1978); *see also SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 74 (D. Conn. 1988) ("The venue provision of the Act represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue.").

In its Motion to Dismiss, Target focuses heavily on the fact that Target itself is headquartered in Minnesota. *See, e.g.*, Mot.1–2. But Congress realized that of course securities suits inherently tend to focus on the company at issue—and yet Congress went out of its way to provide venue *outside* the company's home district. Clearly Congress was trying to ensure that plaintiffs suing for such claims could sue in their home states *and keep the suits there*, as even the influential Southern District of New York has recognized. *See SEC v. Captain Crab, Inc.*, 655 F. Supp. 615, 617 n.1 (S.D.N.Y. 1986) ("The purpose of this broad venue provision is to encourage private enforcement of the securities laws 'by minimizing burdens on plaintiffs in civil suits.' Toward this end, § 78aa affords victims of securities fraud … 'the widest possible number of choices of a district in which to sue.'").

But that obvious legislative goal would be eviscerated by Target's approach that such suits should "almost always" be heard in the company's home district. Mot.1; *see also id.* at 10. "If transfers were granted in securities cases with too much abandon, the effect would be to undermine Congressional efforts to enforce securities laws by minimizing burdens on plaintiffs in civil suits." *Lemberger*, 1976 WL 834, at *5; *see also Micheel v. Haralson*, 586 F. Supp. 169, 172 (E.D. Pa. 1983) (same); *In re Laidlaw Sec. Litig.*, 1991 WL 170837, at *2 (E.D. Pa. Aug. 27, 1991) (same).

Thus—contrary to Target's suggestion that such cases are almost uniformly transferred to the company's home district—courts in the Eleventh Circuit often deny motions to transfer private cases under the Exchange Act to the defendant companies' home venues. *See, e.g.*, *Halbert v. Credit Suisse AG*, 358 F. Supp. 3d 1283, 1286–88 (N.D. Ala. 2018); *Abernathy v. Davis*, 2018 WL 11448855 (N.D. Ala. Sept. 13, 2018); *Dekle v. Glob. Digit. Sols., Inc.*, 2015 WL 3562412, at *4–*6 (S.D. Ala. June 5, 2015); *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1337, 1339 (M.D. Fla. 2010); *Long v. Sports44.com, Inc.*, 2007 WL 3072405 (M.D. Fla. Oct. 19, 2007); *Demere v. Newlin*, 2005 WL 8156280 (S.D. Ga. Aug. 30, 2005); *Duckworth v. Med. Electro-Therapeutics, Inc.*, 768 F. Supp. 822, 825, 831–32 (S.D. Ga. 1991); *Acrotube, Inc. v. J.K. Fin. Grp., Inc.*, 653 F. Supp. 470, 477 (N.D. Ga. 1987).

To head off Target's inevitable spin: Plaintiffs are not saying that transfer is unavailable in an Exchange Act case, but rather that Plaintiffs' choice of venue is given particular weight, and the mere fact that the defendant company's headquarters are

8

located elsewhere (along with everything such a designation entails) is given less weight. *See McIlvaine*, 2008 WL 11332000, at \*2. As discussed above, there are significant ties between this litigation and this District, as well as with Florida. The Lead Plaintiff here sued in his home District and Division, where he received the unlawful Target securities documents, and the same with Plaintiff Carol Bowe. And Inspire Advisors has been assigned the claims of two Florida-based clients, whose venue transfers with the claims.

To overcome this extraordinary respect for Plaintiffs' choice of suing in their home forum, Target would need to make an exceptionally "convincing" argument that the remaining factors favor it. *Taronis*, 2023 WL 4134000, at \*4. Target cannot come close to making that showing, as demonstrated next.[3]

## II. Target Faces No Inconvenience of Witnesses or Discovery in This District.

Target's Motion to Transfer focuses overwhelmingly on the alleged burdens on witnesses and in conducting discovery if this case remains in this District. Mot. 12–16 & n.8. These protestations are unconvincing. There is no meaningful additional burden on Target in having to conduct document and witness discovery with this case pending in this District vs. the District of Minnesota—let alone a burden strong enough to justify transfer. Indeed, courts have consistently held that this factor is of little significance given "the predominance of electronic discovery in the modern era."

---

[3] Plaintiffs do not contest that this action could have been brought in Minnesota. *See Taronis*, 2023 WL 4134000, at \*2. That is because, as discussed above, Congress allowed Target to be sued in nearly every district in the country, a point that strongly favors *rejecting* Target's Motion to Transfer.

*Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1283 (N.D. Ga. 2015).

*First*, Target complains that relevant documents and "evidence" could be considered located at its Minnesota headquarters. Mot.16 n.8; *id.* at 20. But that's true for almost every securities action and cannot provide a basis for transfer, *see, e.g.*, *Credit Suisse*, 358 F. Supp. 3d at 1287, as it would contravene Congress's goal of allowing securities plaintiffs to sue in their home District. *See* Part I, *supra*.

But more to the point, it is unpersuasive for a highly organized, large-scale defendant like Target to focus on where records are supposedly "located." This is not a small defendant with boxes of paper records that need to be inspected in-person. Target's records are in electronic form, and they can be transferred and produced to and from anywhere in the country. The "remote nature of accessing most documents renders many of the relevant factors neutral," at best, for Target. *Smith v. Costco Wholesale Corp.*, 2021 WL 5114494, at *2 (M.D. Fla. Nov. 3, 2021); *see also Deltona Transformer Corp. v. Noco Co.*, 2019 WL 5390476, at *14 (M.D. Fla. Sept. 16, 2019) ("'[M]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof,' thereby reducing the significance of this factor.").

*Second*, Target claims Minnesota "is home to virtually all of the potential witnesses," Mot.2, who "work at Target's Minnesota headquarters," *id.* at 12. As a threshold matter, witness location is largely beside the point because depositions can easily be taken by remote means. "[T]he emergence of taking depositions via Zoom

10

videoconferencing … renders many of the relevant factors neutral," at best, for Target. *Smith*, 2021 WL 5114494, at \*2. And a neutral factor is a loss for Target, given the strong showing it must make.

In any event, Target's portrayal of witness locations is quite a stretch. It claims that "none of the crucial witnesses will be in the Middle District of Florida; yet virtually all can be found in Minnesota." Mot.14. That statement is simply wrong. The Amended Complaint lists the known residences of the thirteen individual Defendants, and only *two* of them actually reside in Minnesota. ECF No. 52, ¶¶ 37–50. Another Defendant (Grace Puma) actually lives in *this District*. *Id.* ¶ 48.[4] The rest are scattered across the country.

That means there are almost as many Target Directors (i.e., actual Defendants) who reside in *this District* as reside in the *entire State of Minnesota*. And of course several named Plaintiffs reside here, too. That matters in particular because Target itself has put Plaintiffs'—and even their family's—actions at issue in this case. For example, in its Motion to Dismiss, Target attached a personal Facebook post allegedly made by Plaintiff Brian Craig's wife, who is not a Plaintiff and is not mentioned at all in the Amended Complaint. *See* ECF No.71-29 (Target attaching a personal Facebook post made by Craig's wife). Target obviously thinks Plaintiff Craig and his wife are both important witnesses, and they both live in this District—putting the lie to Target's

---

[4] *Grace Puma*, Simon & Schuster, https://www.simonandschuster.com/authors/Grace-Puma/198756173 (last visited Feb. 29, 2024).

claim that no such witnesses reside here. Mot.14. Further, Target's decision to search for and attach Facebook posts from a Plaintiff's *spouse* is beyond creepy, procedurally improper, and presumably designed to intimidate those who would bring such a suit. But Plaintiffs won't back down just because Target puts its bullseye on their families.

Also false is Target's claim that keeping this case would "inconvenience 17 of the 19 parties." Mot.2. Of the nineteen parties, only three of them (including Target Corp. itself) would benefit from a transfer to Minnesota, while *at least* four benefit from keeping it in Florida (with three in this District specifically). Florida is therefore actually a more convenient location for the parties, *even when viewed from the perspective of Defendants*.

Even setting aside the named parties, Target's emphasis on the location of its headquarters—and the claim that most employees "work at" that headquarters, Mot.12—is equally unpersuasive. Turns out that during the relevant times and even now, Target's corporate workers are largely remote, and thus they do not in fact "work at" the Minnesota office. Even in 2024, the company requires them to come into their headquarters only *four weeks per year*, which is actually an *increase* from prior practice.[5]

Given Target's willingness to have its corporate employees work remotely for years on end, surely they can raise no objection to taking depositions remotely. *See Smith*, 2021 WL 5114494, at *2.

---

[5] Nick Halter, *Target Calls Employees Back to Corporate Headquarters Quarterly in 2024*, Axios Twin Cities (Dec. 14, 2023), https://www.axios.com/local/twin-cities/2023/12/14/target-office-corporate-workers-downtown.

Target also complains about difficulties compelling attendance of its own employees at *trial*. Mot.14. But that is of no concern where the witnesses "are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.,* 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010).

Just as importantly, it is worth remembering that securities actions "regularly settle and, therefore, rarely go to trial; thus, the issue of unwilling trial witnesses is largely academic." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 170 (E.D.N.Y. 2006).

*Third*, Target declined to seek transfer of the original Complaint in this action, which sued the very same Defendants and raised almost identical claims as those that Target now seeks to transfer. Target was fine shouldering discovery on those claims while the case remained in this District. So what changed? Target will predictably pin its change of heart on the fact that a few additional Plaintiffs were added (several of whom are Florida residents or assignees of Floridians' claims, by the way), but those new Plaintiffs changed almost nothing about *underlying discovery burdens on Target*. The universe of relevant underlying factual evidence—e.g., Target documents and Target witnesses—is essentially the same between the original Complaint and the Amended Complaint. Yet Target suddenly claims discovery and testimony would be an unbearable burden.

There are two take-aways from Target's change of heart: (1) *even in Target's own original estimation,* the supposed additional burdens of discovery from litigating in this

District vs. in Minnesota are so minor-to-nonexistent that Target concluded it could not make even a plausible case for transfer, and that aspect of the transfer analysis has not meaningfully changed in the meantime; and (2) Target now realizes the strong merit to Plaintiffs' claims and is using the pretense of discovery burdens to try and escape this District and head home to Minnesota. Courts consider many factors under the § 1404 framework, but defendants' change of heart about the merits of a case is not among them.

### III. Target Overplays the Alleged Connections Between Minnesota—and Ignores Its Florida and MDFL Connections.

Target claims some of the challenged actions may have been formulated at or disseminated from Target's headquarters in Minnesota and that this strongly favors transfer. Mot.1–2. Again, Target overplays its hand. It also ignores its substantial connections with this District, which in many aspects are at least as strong as those with Minnesota.

*First*, as demonstrated above, Target's emphasis on the location of its headquarters is a red herring given how few of its Directors—who are the named Defendants here—actually reside in Minnesota, and how its corporate employees have been working remotely *for years*. Target also insists that the relevant securities disclosures and statements "were disseminated from Minnesota." Mot.2. Again, that would be true for nearly every Exchange Act suit, yet Congress made clear that plaintiffs should be able to sue outside the companies' home districts. *See* Part I, *supra*.

Because this is a securities lawsuit focusing on Target's shareholder statements, the Court could just as well consider the location of Target's annual shareholder meetings as the relevant location. But amazingly, those meetings don't occur in Minnesota, either. Target's 2023 annual shareholder meeting occurred both online and in Austin, Texas.[6] And its 2020, 2021, and 2022 shareholder meetings all occurred exclusively online.[7] Given all this, there is hardly a strong physical tie between Target's corporate headquarters in Minnesota and the relevant acts here. And as discussed above, only two of Target's thirteen Directors reside in Minnesota, while another resides in Tampa. This all points to a widely diffused geographic scope of corporate policymaking, despite Target's attempts to frame Minnesota as the exclusive locale for all-things-Target.

*Second*, even if important decisions were made within the physical confines of the Target headquarters in Minnesota, those walls can't talk. But Defendants can—and as discussed above, there is little-to-no discovery burden on them from continuing this suit in this District, especially when almost as many of them live in this District as live in Minnesota. ECF No. 52, ¶¶ 37–50.

---

[6] Target Corp., 2023 Proxy Statement and Notice of Annual Meeting of Shareholders (2023), https://corporate.target.com/getmedia/86944c9b-857d-426b-a6cf-19280989cc77/2023-Proxy-Statement_Target-Corporation.pdf

[7] Target Corp., 2020 Proxy Statement and Notice of Annual Meeting of Shareholders 1, 3 (2020), https://corporate.target.com/getmedia/fefd347e-c260-4d91-b8ef-43ed9759b0cf/Target_Proxy-Statement_2020.PDF; Target Corp., 2021 Proxy Statement and Notice of Annual Meeting of Shareholders 1, 5 (2021), https://corporate.target.com/getmedia/b5c20d46-be59-4358-b3f5-f6fc0a608133/Target_Proxy-Statement_2021.PDF; Target Corp., 2022 Proxy Statement and Notice of Annual Meeting of Shareholders 1, 5 (2022), https://corporate.target.com/getmedia/a5039e64-758c-4f33-a972-ff7255813e7a/Target_Proxy-Statement_2022.pdf.

*Third*, Target tries to play up its general corporate ties with Minnesota while ignoring its significant connections with Florida and with this District. As discussed above, relevant actions occurred in this District, too. But Target's ties with this District and with Florida go far deeper than that. Target has more than 75 stores *in this District alone*, which (you guessed it) is more than in the entire State of Minnesota.[8] Target has almost as many stores *in the City of Ft. Myers* as in all of Minneapolis itself (four v. five).[9] This is especially relevant when the allegations include the fact that Target selectively moved Pride Campaign displays "in Southern states" because of such serious backlash. ECF No. 52, ¶ 260. And Target apparently generated over $6 billion in revenue from those Florida stores in the most-recent year for which figures are available.[10]

The Court should reject Target's attempts to make Minnesota the locus of this litigation. And even if there were serious ties to Minnesota, there are at least equally strong ties with Florida and this District. Thus, again, Target has failed to make the required convincing showing that transfer is necessary.

---

[8] *Florida Store Directory*, Target, https://www.target.com/store-locator/store-directory/florida (last visited Feb. 29, 2024).

[9] *Id.*; *Minnesota Store Directory*, Target, https://www.target.com/store-locator/store-directory/minnesota (last visited Feb. 29, 2024)

[10] *Sales Per Capita*, Target, https://corporate.target.com/investors/annual/2022-annual-report/financials/sales-per-capita (last visited Feb. 29, 2024) (noting Florida Target stores averaged "over $300" per capita across the entire state).

## IV.    The Balance of Burdens Strongly Favors Plaintiffs.

When evaluating a transfer motion under § 1404, courts have also made clear that "[w]here a transfer merely shifts the inconvenience from one party to another …, Plaintiffs' choice of forum should remain." *Oller v. Ford Motor Co.*, 1994 WL 143017, at *2 (M.D. Fla. Mar. 30, 1994). A relevant consideration in that analysis is the "relative means of the parties" and thus their relative "financial ability to bear the cost of the change." *Taronis*, 2023 WL 4134000, at *2 n.4. "'Where parties with limited financial means sue large corporate defendants for events which affected the plaintiffs in their local existences, courts are understandably reluctant to allow a transfer.'" *Alcantarilla v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 8785007, at *9 (W.D. Pa. Dec. 15, 2015).

It is doubtful that Target faces any *actual* inconvenience from litigating in this District, as explained above. But even if did face some inconvenience, it has extraordinary resources at its disposal. Target had over $100,000,000,000 in revenue in the most-recent year for which figures are available.[11] Target has hired a fleet of high-powered (and highly-paid) securities attorneys at two of the biggest firms in the world.

By contrast, Plaintiffs hold relatively small amounts of Target stock. They are not rich. They are represented by two small firms and a 501(c)(3) non-profit

---

[11] *Financial Highlights*, Target, https://corporate.target.com/investors/annual/2022-annual-report/financials/financial-highlights (last visited Feb. 29, 2024).

organization. It may be difficult for an enormous entity like Target and its large law firms to understand, but forcing Plaintiffs to find new lawyers authorized to practice in Minnesota and then conduct litigation in that state would impose real burdens on them.

Thus, even if Target could show burdens from litigating in this District, their transfer motion simply asks the Court to "shift[] th[at] inconvenience" (and then some) onto Plaintiffs. *Oller*, 1994 WL 143017, at *2. In such circumstances, "Plaintiffs' choice of forum should remain." *Id.*

## V. Court Congestion Favors Keeping This Case.

The Motion to Transfer also uses cherry-picked statistics to give the impression that the judges of the District of Minnesota are practically sitting idle, so this Court should transfer this case and give them something to do. Mot.21–22. The Motion to Transfer proves the old adage about "lies, damned lies, and statistics." Plaintiffs can proffer statistics showing that the District of Minnesota is in fact *far more congested* than this Court. For example, as of June 30, 2023, there were 1,242 pending cases per judgeship in the District of Minnesota,[12] compared to 541 pending cases per judgeship in the Middle District of Florida.[13] That would strongly favor keeping the case here.

---

[12] *United States District Courts – National Judicial Caseload Profile*, US Courts, http://tinyurl.com/3tvut8cf (District of Minnesota).

[13] *United States District Courts – National Judicial Caseload Profile*, US Courts, http://tinyurl.com/2wvuwbkw (Middle District of Florida).

Bottom line: the judges of both Districts are undoubtedly busy. Yet again, this factor is at best a draw for Target—and thus is actually a loss for Target, given that it must make a "convincing" showing to overcome Plaintiffs' choice of forum. *Taronis*, 2023 WL 4134000, at *4.

## VI. The Pending Suit Against Target in the District of Minnesota Has Nothing to Do with the Allegations Made Here.

The Motion to Transfer obliquely suggests that transfer might offer the prospect of some kind of consolidation or efficiencies with a suit currently pending in the District of Minnesota, which Target claims addresses some of the same proxy materials. Mot.3.

Again, Target stretches to the breaking point to find even the slightest purported connection, proving just how weak the case is for transfer. Target's own Motion to Transfer is immediately forced to concede that the pending Minnesota suit's allegations of misrepresentations are based on "different reasons" than those here, and that there are only two overlapping defendants between that case and this one (Target Corp. and its CEO). Mot.8–9.

Indeed, the two cases have nothing to do with each other. The allegations in the pending Minnesota suit are that Target experienced supply-chain issues and failed "to keep its shelves fully stocked." Complaint at 2, ¶ 3, *Perez v. Target Corp.*, 0:23-cv-769 (D. Minn. Mar. 29, 2023), ECF No. 1. Target's disclosure and statements regarding political risk, blowback, executive compensation, and the Pride Campaign disaster, which form the core of this suit, are not mentioned *even once* in the complaint for the

19

Minnesota case. Even when the plaintiffs in that case filed a much longer and more detailed amended complaint, it *still* never mentions any of those events. *See* Amended Complaint, *Perez*, 0:23-cv-769 (D. Minn. Dec. 15, 2023), ECF No. 70.

Needless to say, this is not even remotely close to satisfying the convincing burden needed to warrant transfer.

## VII. Target Loses All Remaining Factors.

Other potentially relevant factors under § 1404 include things like ability to enforce a judgment and obstacles to fair trials, *see Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1215 (N.D. Fla. 2020), and familiarity with governing law, *Taronis*, 2023 WL 4134000, at *2 n.4. Target's Motion to Transfer either doesn't address these additional factors or does so only in passing. Accordingly, these factors are at best even draws for Target, and at worse favor Plaintiffs because they have limited means and would be forced into a foreign locale, where neither court has particular expertise in securities law.

Because any factor that does not strongly favor transfer is one that justifies keeping the case where it was filed, these remaining factors should be all construed as favoring Plaintiffs and disfavoring Target.

## CONCLUSION

The Court should deny the Motion to Transfer.

Respectfully submitted,

Jason B. Gonzalez (FBN 146854)
Paul C. Huck, Jr. (FBN: 968358)
Samuel J. Salario, Jr. (FBN: 083460)
Lawson Huck Gonzalez, PLLC
215 S. Monroe Street, Suite 320
Tallahassee, Florida 32301
(850) 825-4334
jason@lawsonhuckgonzalez.com

/s/ Jonathan Berry
Jonathan Berry (pro hac vice)
    *Lead Counsel*
R. Trent McCotter (pro hac vice)
Andrew W. Smith (pro hac vice)
Caleb Orr (pro hac vice)
Boyden Gray PLLC
801 17th St. NW, #350
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com

Gene P. Hamilton (pro hac vice)
Reed D. Rubinstein (pro hac vice)
Andrew J. Block
America First Legal Foundation
611 Pennsylvania Avenue S.E.
No. 231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024, I filed the foregoing via the Court's CM/ECF system, which will serve all counsel.

/s/ Jonathan Berry

Jonathan Berry