**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

|  |  |
|---|---|
| BRIAN CRAIG, CAROL BOWE, INSPIRE ADVISORS, LLC, STEVEN COOK, AND LAURA THOMPSON, <br><br> *Plaintiffs*, <br><br> v. <br><br> TARGET CORPORATION, BRIAN C. CORNELL, DAVID P. ABNEY, DOUGLAS M. BAKER, JR., GEORGE S. BARRETT, GAIL K. BOUDREAUX, ROBERT L. EDWARDS, MELANIE L. HEALEY, DONALD R. KNAUSS, CHRISTINE A. LEAHY, MONICA C. LOZANO, GRACE PUMA, DERICA W. RICE, and DMITRI L. STOCKTON, <br><br> *Defendants*. | No.: 2:23-cv-599-JLB-KCD |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................1

ARGUMENT .......................................................................................................2

I.    Plaintiffs' Section 10(b) Claim Fails. ...........................................................2

    A.    Plaintiffs Fail To Plead Falsity. .................................................2

        1.    The AC's Allegations About Publicly Known Risks Are Fatal........................................................................2

        2.    Plaintiffs Misstate the Standard To Shield Their Distortions of Fact..................................................4

        3.    The Risk Warnings Were Not False/Misleading.......................5

        4.    The Other Alleged Misstatements Were Not False/Misleading. ...................................................8

    B.    Plaintiffs Fail To Plead Scienter. .............................................12

        1.    Plaintiffs Fail Their Stand-In for the "Severe Recklessness" Test. ..................................................12

        2.    The AC Cannot Plead Scienter Through Anonymous Comments................................................14

        3.    Industry-Standard Compensation Cannot Establish Scienter. ...................................................14

        4.    Nonfraudulent Inferences Are More Compelling. ....................15

    C.    Plaintiffs Fail To Plead Loss Causation.............................................16

II.    Plaintiffs' Section 14(a) Claim Fails. .........................................................18

CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bastian v. Petren Res. Corp.*,
　892 F. 2d 680 (7th Cir. 1990) .............................................................................18

*Bhatt v. Tech. Data Corp.*,
　2018 WL 6504375 (M.D. Fla. Dec. 11, 2018)........................................................3

*In re BP p.l.c. Sec. Litig.*,
　843 F. Supp. 2d 712 (S.D. Tex. 2012)....................................................................9

*Brophy v. Jiangbo Pharms., Inc.*,
　781 F.3d 1296 (11th Cir. 2015)...........................................................................13

*Cal. Pub. Emp.'s Ret. Sys. v. Chubb Corp.*,
　394 F.3d 126 (3d Cir. 2004) ...............................................................................19

*Campo v. Sears Holding Corp.*,
　371 F. App'x 212 (2d Cir 2010)............................................................................5

*Carvelli v. Ocwen Fin. Corp.*,
　934 F.3d 1307 (11th Cir. 2019)............................................................... 3, 6, 12

*In re Centerline Holdings Sec. Litig.*,
　613 F. Supp. 2d 394 (S.D.N.Y. 2009), *aff'd*, 380 F. App'x 91 (2d Cir.
　2010) ...................................................................................................................15

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*,
　46 F.4th 22 (1st Cir. 2022) ...................................................................................7

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F.
　Supp. 2d 1267 (N.D. Ga. 2011)............................................................................5

*City of Roseville Emp.'s Ret. Sys. v. Horizon Lines, Inc.*,
　442 F. App'x 672 (3d Cir. 2011).........................................................................14

*City of Roseville Emp.'s Ret. Sys. v. Sterling Fin. Corp.*,
　963 F. Supp. 2d 1092 (E.D. Wa. 2013), *aff'd*, 691 F. App'x 393 (9th
　Cir. 2017) ...........................................................................................................10

*Constr. Lab. Pension Tr. for S. Cal. v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020) .................................................................8

*Druskin v. Answerthink, Inc.*,
299 F. Supp. 2d 1307 (S.D. Fla. 2004) ...................................................... 15, 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................... 16, 18

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
594 F.3d 783 (11th Cir. 2010) ................................................................... 19, 20

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th
Cir. 2010) ...........................................................................................................15

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
560 F. Supp. 2d 1221 (M.D. Fla. 2008) ...........................................................13

*Emps. Ret. Sys. of St. Louis v. Jones*,
2021 WL 1890490 (S.D. Ohio May 11, 2021) ..................................................20

*In re Exxon Mobil Sec. Litig.*,
500 F.3d 189 (3d Cir. 2007) ..............................................................................19

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) .........................................................................17

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) ...................................................17

*Galef v. Alexander*,
615 F.2d 51 (2d Cir. 1980) ................................................................................20

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) ................................................................................3

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..................................................................... 17, 18

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ...............................................................................8

*Gov. Emps. Ins. Co. v. Landau & Assocs., P.A.*,
2019 WL 12493609 (M.D. Fla. Mar. 29, 2019) ..................................................9

*In re Greenlane Holdings, Inc. Sec. Litig.*,
    511 F. Supp. 3d 1283 (S.D. Fla. 2021)...........................................................4, 6

*Gruber v. Gilbertson*,
    628 F. Supp. 3d 473, 486 (S.D.N.Y. 2022) .......................................................17

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) .........................................................................6, 7

*Henningsen v. ADT Corp.*,
    161 F. Supp. 3d 1161 (S.D. Fla. 2015), *aff'd*, 660 F. App'x 850 (11th
    Cir. 2016) ......................................................................................................5, 14

*In re Home Loan Servicing Sols., Ltd. Sec. Litig.*,
    2016 WL 10592320 (S.D. Fla. June 6, 2016) .............................................. 17, 18

*Inst. Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ...............................................................................13

*In re Jiangbo Pharms., Inc. Sec. Litig.*,
    884 F. Supp. 2d 1243 (S.D. Fla. 2012), *aff'd*, 781 F.3d 1296, 11th
    Cir. (2015) .........................................................................................................17

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ...........................................................................11

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd*, 543 F. App'x 72 (2d Cir.
    2013) ..................................................................................................................17

*Lee v. Frost*,
    2021 WL 3912651 (S.D. Fla. Sept. 1, 2021) ..................................................9, 19

*Little Gem Life Scis. v. Orphan Med*,
    537 F.3d 913 (8th Cir. 2008) ..............................................................................19

*Luczak v. Nat'l Beverage Corp.*,
    812 F. App'x 915 (11th Cir. 2020).......................................................................17

*MacPhee v. MiMedx Grp., Inc.*,
    73 F.4th 1220 (11th Cir. 2023) ...........................................................................18

*MBI Acquisitions Partners v. Chron. Publ'g Co.*,
    301 F. Supp. 2d 873 (W.D. Wis. 2002)................................................................13

*McDowell v. Bracken*,
  317 F. Supp. 3d 1162 (S.D. Fla. 2018), *aff'd*, 794 F. App'x 910 (11th
  Cir. 2019) ................................................................................................ 19

*In re Meta Materials Inc. Sec. Litig.*,
  2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023) .................................................. 19

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ................................................................ 16, 18

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 246 (2d Cir. 2014) ......................................................................... 8

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ...................................................................... 14

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014) ............................................................. 15

*Omnicare Inc. v. Labs. Dist. Council Indus. Pension Fund*,
  575 U.S. 175 (2015) .................................................................................... 11

*Plumley v. Sempra Energy*,
  847 F. App'x 426 (9th Cir. 2021) .................................................................... 13

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ........................................................................... 7

*Shash v. Biogen, Inc.*,
  84 F.4th 1 (1st Cir. 2023) ....................................................................... 17, 18

*In re Tech. Chems. Sec. Litig.*,
  2000 WL 1222025 (S.D. Fla. July 3, 2000) ...................................................... 13

*Tello v. Dean Witter Reynolds, Inc.*,
  494 F.3d 956 (11th Cir. 2007) ..................................................................... 2, 3

*In re The Home Depot, Inc. S'holder Deriv. Litig.*,
  223 F. Supp. 3d 1317 (N.D. Ga. 2016) ............................................................ 20

*In re U.S. Off. Prods. Sec. Litig.*,
  326 F. Supp. 2d 68 (D.D.C. 2004) ................................................................. 19

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
  985 F.2d 1190 (2d Cir. 1993) .......................................................................... 4

*Wang v. Cloopen Grp. Holding Ltd.*,
  661 F. Supp. 3d 208 (S.D.N.Y. 2023).................................................8

*Weisberg v. Coastal States Gas Corp.*,
  609 F.2d 650 (2d Cir. 1979)..........................................................20

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
  282 F. Supp. 3d 1074 (N.D. Cal. 2017).....................................19, 20

*Werner v. Werner*,
  267 F.3d 288 (3d Cir. 2001)...........................................................11

*Whirlpool Fin. Corp. v. G.N. Holdings, Inc.*,
  67 F.3d 605 (7th Cir. 1995)..............................................................3

*In re Willis Towers Watson Proxy Litig.*,
  439 F. Supp. 3d 704 (E.D. Va. 2020)..............................................19

*Wilson v. Great Am. Indus., Inc.*,
  979 F.2d 924 (2d Cir. 1992)............................................................20

*Woolgar v. Kingstone Co., Inc.*,
  477 F. Supp. 3d 193 (S.D.N.Y. 2020)................................................9

*In re Zoom Sec. Litig.*,
  2022 WL 484974 (N.D. Cal. Feb. 16, 2022)......................................7

**Statutes**

17 C.F.R. §240.10b-5(b)...................................................................6

Minn. Stat. §302A.251, subd. 5.......................................................10

Private Securities Litigation Reform Act ...................................3, 4, 19

**Rules**

Federal Rule of Civil Procedure 9(b) ..........................................18, 19

Section 10(b) ................................................................................2, 6

Section 14(a) ..............................................................................2, 19

## INTRODUCTION

This action strains to convert Plaintiffs' disagreement with Target's business judgment into claims for securities fraud. To curb this sort of abuse, Congress made securities fraud difficult to plead. But, even without the highest pleading standard in American civil law, the Amended Complaint ("AC") fails in the most basic of ways. To recap, the AC alleges:

- For years, Target publicly disclosed its support for LGBTQ+ initiatives (including Pride Collections), resulting in widely reported backlash from some stakeholders (¶¶ 111-97);

- That backlash risk was so obvious that investors warned Target about it (¶15), but then:

- Target reversed course and decided to conceal backlash risk, so it could release the 2023 Pride Collection ("Collection"), which was so exceptionally offensive that it was ***certain to immediately cause*** (and thereby ***reveal***) the risk Target was concealing (¶¶2, 207).

This makes no sense. Plaintiffs' pleading is at war with itself, defeating each element:

**Falsity**. Despite pleading that Target's ESG/DEI risks were so "well-known" and "obvious" that investors *themselves* warned Target about them, Plaintiffs allege that Target concealed those risks. Because public knowledge of risk dooms their claims, Plaintiffs now argue that the public record was "obscure." But that record includes Target's statements and national news, which investors are presumed to be aware of.

**Scienter**. Plaintiffs' scienter theory is not even plausible, let alone compelling. They say Cornell publicly admitted his hidden intent to commit fraud years before the fraud began. And Cornell was supposedly motivated to lie because a tiny minority of his pay was based on achieving DEI (even though the rest was based on financial performance). In other words, Cornell supposedly cut off his nose to spite his face.

**Section 10(b) Loss Causation**. The efficient market is the beginning and end

of Plaintiffs' claims:  each time the "truth" was "revealed," ***the stock price went up***.  Recognizing this is fatal, Plaintiffs try to walk back the efficient market theory that undergirds their claims.  Plaintiffs say the market took weeks to process the *risk* of boycott—a risk they plead was obvious.  Controlling authority forecloses that position.

**Section 14(a) Causation**.  Plaintiffs say that misrepresentations in the Proxies caused their loss.  But the AC shows that: (1) investors *knew* the "truth" before the vote and *still* elected the directors, and (2) no one was voting for or against the Collection.

Each of these is independent grounds for dismissal.  The AC is meritless; it must be dismissed in full with prejudice.

**ARGUMENT**[1]

**I.    PLAINTIFFS' SECTION 10(B) CLAIM FAILS.**[2]

**A.    Plaintiffs Fail To Plead Falsity**.

**1.  The AC's Allegations About Publicly Known Risks Are Fatal**.

Investors are "presumed to have information available in the public domain and [are] imputed with constructive knowledge of this information."  *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 970 (11th Cir. 2007).  Plaintiffs *admit* that shareholders and others repeatedly warned Target that ESG/DEI initiatives would cause backlash. (¶15.)[3]  Recognizing that this dooms their claims, Plaintiffs backpedal.  (Opp.13-15.)

---

[1] Capitalized terms not defined herein have the same meaning as in the Motion to Dismiss (MTD) (Dkt.70). "Opp." refers to Plaintiffs' Opposition (Dkt.82). "Ex._" refers to exhibits appended to the declaration of Alexander J. Rodney (Dkt.71). All Opp. cite emphases are original; all others are added.

[2] Plaintiffs do not contest that Inspire Advisors lacks standing and thus concede the point. (MTD n.5.)

[3] The AC pleads that (i) Target publicly supports LGBTQ+ causes (¶¶14-15, 111-97); (ii) related risks to that support were "obvious," "evident," and "well-known" (¶¶19, 188-92); and (iii) backlash was widely reported (¶¶163-85).

2

As an initial matter, Plaintiffs contend that these are materiality issues that cannot be resolved at this stage. (Opp.13.)  But where, as here, it is plainly obvious (indeed admitted) that the market was aware of the allegedly concealed information, the PSLRA requires dismissal.  *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1321-22 (11th Cir. 2019).  Plaintiffs try to argue their allegations are based on "disparate" and "obscure" sources of evidence.  (Opp.14.)  But the AC points to some of the country's most well-known and widely disseminated sources, including the *Wall St. Journal* (¶¶81, 173), *NY Times* (¶10), NBC (¶145), and CNBC (¶401).  Plus, the AC alleges instances of *public* backlash, including: (i) "more than 1.5 million people" pledged to boycott (¶174); (ii) Target's sales fell (¶¶163, 175, 186); (iii) popular commentators publicly responded (¶¶144-45, 148, 153, 164-71, 181, 184); and (iv) "viral" social media (¶¶170, 183.)  Plaintiffs cannot escape that investors already knew the risk of backlash.[4]

As a fallback, Plaintiffs say these admissions don't matter as "Defendants rely on the materiality of *other* public information that they themselves did not disclose." (Opp.13).  There is no such exception.  *See, e.g.*, *Tello*, 494 F.3d at 970 (investors are imputed with constructive knowledge of public information); *Whirlpool Fin. Corp. v. G.N. Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995).[5]  Plaintiffs' own case confirms

---

[4] Plaintiffs themselves allege that investors understood the Oversight Statements to mean that the Board oversaw *all* ESG/DEI risks. (¶¶338, 355.)  If investors expected the Board to oversee such risks, then they were, at a minimum, *aware* that those risks existed.  *See Bhatt v. Tech. Data Corp.*, 2018 WL 6504375, at *5 (M.D. Fla. Dec. 11, 2018) (fraud cannot be premised on disclosed risk).

[5] *Ganino v. Citizens Utilities*, does not hold otherwise.  There, defendants allegedly improperly reported the timing of transaction revenue—information solely within the company's possession. 228 F.3d 154, 158-60 (2d Cir. 2000).  The court held that, even though defendants disclosed the fact of the revenue, that was insufficient to dispel the false timing impression.  *Id.* at 168.  Here, Plaintiffs argue that somehow Defendants concealed *public reaction* to its public initiatives.  But public reaction is *necessarily*

this.  (Opp.14 & n.8 (*United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190,

1198 (2d Cir. 1993).)  In any event, *Target* repeatedly disclosed its LGBTQ+ support.[6]

### 2.  Plaintiffs Misstate the Standard To Shield Their Distortions of Fact.

Contrary to Plaintiffs' assertion that their allegations "must be accepted as true"

(Opp.31), the PSLRA *requires* the Court to reject non-particularized allegations and

permits it to consider incorporated documents and matters subject to judicial notice.

(MTD 3n.2, 15-16.)  Here, Plaintiffs' fact misstatements are rampant.  For instance:

Joke by Uninvolved Employee Is Irrelevant.  As supposed evidence of fraud,

the Opposition cites six times to a personal social media post made by a nonparty

employee that Plaintiffs claim was "put in charge" of the Collection, contending that

he admitted an intention to hurt Target's sales.  (Opp.3-4, 16, 21, 30, 34.)  But the

articles cited in the AC show the opposite:  the employee gained his (nonexecutive)

position and posted about it on his personal social media in November 2023—six

months *after* the Collection was released and the alleged fraud was "revealed."  (¶¶200-

01.)  After an anti-LGBTQ+ group shared his post, one antagonist asked, "lol you

gonna make Targets sales tank too?" to which the employee allegedly responded (in

jest), "Yes. Yes I will make sales tank ❤️ 😋."  Even setting aside that the remark was

made in jest, again, the articles make clear that the employee was not involved in the

Collection.  In any event, Plaintiffs fail to allege that he had connections to any

---

publicly known, not uniquely in Target's control.  *In re Greenlane Holdings, Inc. Sec. Litig.*, 511 F. Supp.
3d 1283, 1306-07 (S.D. Fla. 2021) (information about external world weighs against materiality).
[6] The AC cites Target's: (i) public statements (¶¶11, 77-80, 138, 141, 147, 155, 172, 178); (ii) annual
Pride Collections (¶¶9, 144, 149-52, 165); and (iii) political support (¶¶141, 156, 168).

Defendant or that any Defendants were aware of, much less approved, his post. *See Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1189, 1205 (S.D. Fla. 2015) (no falsity or scienter where allegations regarding company's state of affairs post-date the alleged fraudulent misstatement), *aff'd*, 660 F. App'x 850 (11th Cir. 2016).

Public "Admission" 6 Years Before Alleged Fraud Is Irrelevant. Plaintiffs contend that Cornell's 2016 statement (that backlash to Target's opposition to a transgender bathroom ban was unexpected) was an admission—6 years in advance—that Target failed to "adequately assess" ESG/DEI risks. (Opp.17.) But scienter cannot be proven based on unrelated statements years prior to the alleged fraud. *See Campo v. Sears Holding Corp.*, 371 F. App'x 212, 215 (2d Cir 2010) (speculation regarding opinion held by defendant several years prior not an "admission").

Unsubstantiated Speculation Is Irrelevant. Plaintiffs allege 10 times, as fact, an assertion from a CW that the Collection was intended to "alienate" customers and "push the envelope." (Opp.3-5, 16, 18, 30, 42.) But they fail to allege the CW had (a) first-hand knowledge, (b) involvement in the Collection, (c) connections to any Defendant, or (d) any basis for his opinion. (MTD 38-39.) *See City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1297 (N.D. Ga. 2011) (rejecting CW allegations that fail to state basis of first-hand knowledge).

**3. The Risk Warnings Were Not False/Misleading**.

a. The Risk Warnings Clearly Warned Investors about Backlash Risk.

Recognizing that Target's repeated warnings about ESG/DEI risks foreclose their claims (MTD 17-21), Plaintiffs instead argue that they were deficient because the

warnings were both too broad and too narrow.  *First*, Plaintiffs say the warnings were overbroad because they didn't specifically identify conservatives (Opp.8-9, 11).  But broad warnings adequately identify risks, particularly from unpredictable third parties.  *See In re Greenlane Holdings Sec. Litig.*, 511 F. Supp.3d 1283, 1311 (S.D. Fla. 2021) (warnings meaningful where they broadly warn of third-party risk).  And Target warned of the *precise* risk here: that negative reactions/boycotts—spread via social media—could cause material harm (MTD 5-7).  That Target did not focus on conservatives is irrelevant.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) (companies not required to disclose every conceivable risk).[7]

*Second*, Plaintiffs reverse course and argue the Risk Warnings were *too narrow*.  But they reach this conclusion by ignoring that Target (1) warned about risks from its failure to "***meet evolving and <u>varied</u> stakeholder expectations***" regarding its ESG positions and (2) defined "stakeholders" to include customers and shareholders.  (MTD 6.)

Plaintiffs bend over backwards to interpret the phrase "stakeholders" to exclude anyone opposed to ESG.  (Opp.9-11.)  But the Court must look at what the statements *actually said*, not Plaintiffs' misinterpretation of it.  (*See* MTD 24.)  Again, Target defined "stakeholders" to include all customers and investors.  Plaintiffs argue that the Court should redefine this publicly disclosed term based on Target's conduct.  (Opp.10, 17.)  But their authority shows the opposite.  In *Zoom*, the defendant (Zoom)

---

[7] Section 10(b) does not create a duty to disclose risk.  17 C.F.R. §240.10b-5(b).  Moreover, this Circuit has rejected attempts to impose Section 10 liability for supposed violations of Regulation S-K, including Item 105.  *See Greenlane*, 511 F. Supp. 3d at 1312; *see also Carvelli,* 934 F.3d at 1330-32.

*admitted* that its *internal and undisclosed* definition contradicted its public usage.  *In re Zoom Sec. Litig.*, 2022 WL 484974, at *3 (N.D. Cal. Feb. 16, 2022).  When Zoom later argued that its public usage was ambiguous, the court held Zoom to its admission.  *Id.* Target is not arguing any ambiguity and has defined the term consistently throughout.[8]

b. **Plaintiffs Concede That Defendants Did Not Have Actual Knowledge of Already Occurring or Virtually Certain Risks Causing Material Harm.**

Failing to show that the Risk Warnings omitted anti-ESG/DEI risks, Plaintiffs reverse course and argue that the warnings were misleading.  (Opp.15-16.)  Because risk warnings are predictions about the future, they can only be actionable where Plaintiffs plead facts showing that—at the time they were made—Defendants had (1) *actual knowledge* that (2) the warned-of risk was already occurring or virtually certain to occur.  (MTD 22-24.)[9]  Here, the warned-of risk was that negative perceptions could result in boycotts (or other negative reactions) that could materially harm Target. Plaintiffs *admit* that Defendants did not have (1) actual knowledge at the time the Risk Warnings were made that (2) backlash to the Collection was virtually certain to occur, let alone that it would materially impact Target.  In fact, they argue (implausibly) that "Defendants clearly didn't have in mind the risk of *opposition* to Target's ESG/DEI

---

[8] Plaintiffs contend that the Risk Warnings excluded anti-ESG backlash because Target cannot meet the expectations of anti-ESG customers "*through* ESG/DEI goals and initiatives." (Opp.11.)  But those who oppose ESG goals still have expectations regarding implementation.  And they clearly *did*, since their reactions varied (as Target warned they could) based on the initiative. (¶¶165, 172, 183.)

[9] *See Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999) (forward-looking statements inactionable where no *actual knowledge* of falsity); *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 35 (1st Cir. 2022) (duty to disclose arises only when defendants *knew* alleged risk materialized/was nearly certain to); *Rombach v. Chang*, 355 F.3d 164, 173-74 (2d Cir. 2004).

positions" at all.  (Opp.8 n.3.)  That alone requires dismissal.

Attempting to avoid this, Plaintiffs invent an exception based on "inconsistent" information, relying on out-of-Circuit authority that did *not even address whether risk disclosures were actionable*.  (Opp.16. (citing *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 779 (9th Cir. 2023)).)[10]  Regardless, Plaintiffs fail to satisfy their made-up standard.  They try to do so by distorting the timing and content of so-called admissions (Opp.16-17), but those misstatements must be rejected (*supra* §I.A.2).

Plaintiffs also say that the warned-of risk had occurred because public backlash was "ongoing."  (Opp.15 (¶¶157-86).)  Again, this fails because that backlash *was publicly known*, defeating falsity.  (MTD 21-22.)

Finally, Plaintiffs claim that the "uniquely offensive" Collection "increased the 'probability'" that backlash would occur.  (Opp.13.)  But, even *if* that were true, an "increase in a risk does not mean the risk has already come to pass."  *Constr. Lab. Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 538 (S.D.N.Y. 2020).[11]

### 4. The Other Alleged Misstatements Were Not False/Misleading.

**Oversight Statements.**  Because the Oversight Statements did not guarantee that oversight would eliminate risk (MTD 24-25), the AC alleged falsity by arguing

---

[10] *Glazer* simply held that risk disclosures did not immunize *other alleged misstatements* where defendant warned of risks to merger closing but omitted that buyer had threatened to back out.  *Id.* at 779-781.

[11] Plaintiffs' reliance on *Jinkosolar* and *Wang* is misplaced.  (Opp.12.)  In both, the defendants failed to disclose that the risk warned of was *already* occurring and causing material harm (or was certain to).  *See Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 246 (2d Cir. 2014) (warned of compliance risk but was already committing serious violations); *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208 (S.D.N.Y. 2023) (warned of factors impacting customer retention but had already experienced "dramatic" drop in retention).

that Defendants were not overseeing risk *at all*.  (¶¶307-09.)  After Defendants pointed out the AC pleads no facts in support (MTD 25-27), Plaintiffs now try to replead, arguing that oversight *must have been "faulty."*  (Opp.18.)  This fails for three reasons.

*First*, Plaintiffs may not replead in their opposition.  *See Gov. Emps. Ins. Co. v. Landau & Assocs., P.A.*, 2019 WL 12493609, at *14 (M.D. Fla. Mar. 29, 2019).  *Second*, they still fail to plead falsity, because imperfect oversight is consistent with having a mechanism for oversight.  *See Lee v. Frost*, 2021 WL 3912651, at *11-12 (S.D. Fla. Sept. 1, 2021) (absence of diverse members did not show falsity of anti-discrimination policies).  *Third*, Plaintiffs plead no facts that oversight was faulty.  Plaintiffs point to past backlash and that Target ultimately experienced backlash in response to the Collection.  But Plaintiffs conflate the *existence* of risk with failure to oversee that risk. *See In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 761 (S.D. Tex. 2012) ("[K]nowledge of risk does not demonstrate that BP's statements [that it oversaw risk] were false or misleading; Plaintiffs' argument mistakenly equates risk with falsity.")[12]  Plaintiffs fail to allege any specific flaws in the Board's risk oversight.  *See id; Woolgar v. Kingstone Co., Inc.*, 477 F. Supp. 3d 193, 231-32 (S.D.N.Y. 2020).  In any event, if the public backlash alerted directors to increased risk, it also alerted investors, which means there

---

[12] Separately, Plaintiffs say *BP* supports their contention that the 2023 boycotts demonstrated "powerful evidence" of "disregarded warnings and lack of oversight."  (Opp.19.)  It does not.  In *BP*, the court examined statements that BP (1) managed risks and (2) was taking specific steps on safety measures.  *BP*, F. Supp. 2d at 757-62. The court found that prior safety failures did not make BP's oversight statement false because even companies operating in a risky industry can manage risk.  *Id.* at 762.  By contrast, the court identified evidence of falsity regarding BP's statement that it was taking steps to increase safety measures, given recurrent safety lapses.  *Id.* at 757-59.  Here, the Oversight Statements referred (at most) to risk oversight—not specific measures to manage risk.  (MTD 24-25.)

can be no falsity. *See City of Roseville Emp.'s. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1114 (E.D. Wa. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017).[13]

**Value Statements.** Plaintiffs do not dispute that the Value Statements, as written, are accurate, which defeats falsity. (MTD 28.) Plaintiffs instead try to create falsity by misstating the law. Specifically, Plaintiffs say that, under *Delaware* law, Target has no other cognizable interests but those of shareholders. Thus, Plaintiffs say, when Defendants refer to Target's interests, they exclude stakeholders as a matter of law. But Target is a Minnesota corporation subject to Minnesota law: its directors are empowered to consider a broad range of stakeholder interests, including "community and societal considerations." Minn. Stat. §302A.251, subd. 5. In any event, the standard is how a reasonable investor would interpret the phrase based on the total mix of information (MTD 21); here, Target's public statements make clear that promotion of company interests includes its stakeholders. (Ex. EE-2.)[14]

**Compensation Statements**. Plaintiffs do not dispute that the Proxies disclosed ESG/DEI as a factor, but claim it was "buried." (Opp.21-22.) They ignore that the Compensation Statements were (1) laid out in one section and (2) preceded by an

---

[13] Plaintiffs' argument that the Oversight Statements took "on even greater significance in light of Target's self-admitted failures" to adequately oversee risk misconstrues the facts. (Opp.17.) As stated above, Cornell's statement on Target's risk assessment related to 2016 backlash. (¶177.) He did not "admit" 6 years in advance that Target's overall risk oversight was inadequate, or even that it was then. And the AC admits that after the 2016 backlash, Target made changes to try to prevent similar future backlash (¶403), undermining Plaintiffs' theory that Defendants were stoking or ignoring risk.

[14] Rather than attempt to defend their contention that involvement with non-profits is a "disabling conflict of interest," Plaintiffs again invoke an employee's social media post and assert that it shows the Board knowingly allowed an "extreme conflict[]." (Opp.21.) But the AC pleads that the Board delegated to *executives*. (¶¶375-76.) Plaintiffs do not allege that the employee was an executive or was responsible for implementing ESG/DEI mandates at the time of the alleged fraud. (*Supra* §I.A.2.)

"Executive Summary," which fronted ESG/DEI. (MTD 9; Exs. C-34, D-37.)[15]

Plaintiffs concede that the Compensation Statements are opinions and are, therefore, only actionable if Plaintiffs meet the standard in *Omnicare*. (Opp.22-23.) Plaintiffs must plead that Target either (1) did not hold the professed belief, (2) embedded an untrue fact, or (3) omitted information making the statement misleading. *Omnicare Inc. v. Labs. Dist. Council Indus. Pension Fund*, 575 U.S. 175, 185, 194 (2015). This is "no small task" (MTD 30-31); Plaintiffs do not even *try* (Opp.23).

**Backlash Statements**. Based solely on anonymous sources, Plaintiffs argue that the Backlash Statements—which explained that Target was adjusting the Collection in response to backlash and threats impacting employees' sense of safety—were misleading because there were no threats. (¶¶252-61.) But the articles the AC cites report that Target indeed received threats.[16] Plaintiffs quibble these threats were "unspecified" or "legitimate expressions" of opposition and argue that, because anonymous sources stated online *and* in the media that Target was not concerned about employee safety, then it must be so. (Opp.24.) But opinions of anonymous sources are not facts, regardless of where they appear. (MTD 32.) It is Plaintiffs' burden to plead facts showing that the Backlash Statements were false; they fail (*id.*).

---

[15] Both *Kennedy* and *Werner* confirm the adequacy of Target's disclosure. In *Kennedy*, the Eleventh Circuit found a proxy misleading where scattered information failed to disclose the ultimate point—that defendants would maintain control. *Kennedy v. Tallant*, 710 F.2d 711, 720 (11th Cir. 1983). In *Werner*, by contrast, the court found that a report describing a stock program in one contiguous section was sufficient. *Werner v. Werner*, 267 F.3d 288, 298-99 (3d Cir. 2001). Here, the Proxies disclosed the conclusion (i.e., the ESG/DEI factor) *and* described the plan in one contiguous section. (MTD 9.)

[16] Plaintiffs claim that Ex. L reported threats to Bud Light and Nike, but the article states Target faced "*similar threats and transphobic commentary*" to Bud Light and Nike.

### B.    Plaintiffs Fail To Plead Scienter.

Plaintiffs' scienter theory is utterly implausible.  According to Plaintiffs, Cornell (1) publicly admitted years ago Target's oversight of risks related to its LGBTQ+ support was inadequate (¶177), (2) yet nevertheless lied about the existence of those risks, just so (3) Target could release a collection so "exceptionally offensive" that he knew was "*certain to*" cause boycotts and financial harm; but then (4) as soon as those boycotts happened (as he knew they would), he changed course to mitigate financial harm, and (5) lied about the reasons for doing so.  The reason?  Because Cornell "prioritized favors" to stakeholders over "financial returns" and a small minority of his compensation was based on DEI goals.  (Opp.25-29.)  Unsurprisingly, this fails.

#### 1.  Plaintiffs Fail Their Stand-In for the "Severe Recklessness" Test.

The Opposition retreats from Plaintiffs' intentional fraud allegations and instead argues that Cornell was "severely reckless." (Opp.30.) Severe recklessness requires an "extreme departure" from ordinary standards of care "presenting a danger of misleading investors."  (MTD 34.)  Plaintiffs' three novel theories fail. (Opp.28-31.)

Public Statements Never Satisfy Scienter.  Plaintiffs argue that the Oversight and Value Statements were "highly unreasonable" because they supposedly contradicted *public* comments Cornell made previously, which Plaintiffs construe as evincing an intent to prioritize stakeholders.  (Opp.28.)[17]  Because severe recklessness based on "conflicting information" requires that the defendant disregard

---

[17] Plaintiffs claim that prioritizing stakeholders, made inadequate oversight "inevitable." (Opp.28.) Even if that were so, investors knew too, defeating scienter.  *See Carvelli*, 934 F.3d at 1321-22.

"undisclosed" contradictory information, public information cannot suffice. *See Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 560 F. Supp. 2d 1221, 1238-39 (M.D. Fla. 2008); *Plumley v. Sempra Energy*, 847 F. App'x 426, 429 (9th Cir. 2021).

<u>Fraud-by-Hindsight Fails</u>.    Plaintiffs contend that Cornell "egregious[ly] refus[ed]" to investigate the Oversight Statements.    (Opp.30.)    But Plaintiffs fail to plead any facts in support.[18]    They simply claim the risk transpired, which is textbook impermissible fraud by hindsight.    *In re Tech. Chems. Sec. Litig.*, 2000 WL 1222025, at *7 (S.D. Fla. July 3, 2000) (rejecting fraud by hindsight).

<u>Plaintiffs Cannot Escape Their Admission that the CW Lacks Foundation</u>.    Nor can Plaintiffs' CW allegations salvage scienter.    Plaintiffs do not dispute that (1) they provide no basis for the CW's speculation; or (2) that his speculation is untethered from Defendants or any other executive, which is required to establish scienter.    (MTD 38-39.)    Because Plaintiffs cannot lay any such foundation, they instead attempt to form a connection through sleight of hand.    For instance, Plaintiffs contend that:

- An employee "in charge" of the Collection said he would "make sales tank" (Opp.3, 30; ¶¶200-201), but the employee had *zero* involvement with the Collection and the alleged statement was made 6 months *after* the Collection was released (*supra* §I.A.2).

- In 2019 Target had a policy requiring Cornell's approval of "public pronouncements on hot button issues" (Opp.30; ¶403), but Plaintiffs do not plead that policy was in effect in 2023 and the Collection's merchandise was not a "pronouncement."

---

[18] *See Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1302-05 (11th Cir. 2015) (no scienter because no allegation that red flags would have alerted CFO). Plaintiffs' case demonstrates this deficiency. (Opp.29 (citing *MBI Acquisitions Partners v. Chron. Publ'g Co.*, 301 F. Supp. 2d 873, 889 (W.D. Wis. 2002) (finding scienter where defendants stated no undisclosed liabilities but ignored *non-public* backlog of unprocessed returns))).

- Defendants "must have known" about lack of oversight because the Collection took time
  to prepare (Opp.30), but this Circuit rejects such theories. *Mizzaro v. Home Depot, Inc.*, 544
  F.3d 1230, 1250-51 (11th Cir. 2008).

- Cornell stated that the teams had been "working so hard" (Opp.31 (¶251)), but that says
  nothing about his knowledge of *what* they were doing.

None of this details Defendants knowledge, which is fatal.  (MTD 38-39.)

### 2.  The AC Cannot Plead Scienter Through Anonymous Comments.

Relying solely on anonymous sources, Plaintiffs claim that Cornell intentionally

misstated that Target changed the Collection to address employee safety. (Opp.31-32.)

But Plaintiffs fail to allege *any* basis for these sources' knowledge as to (1) Cornell's

state of mind, or (2) employees' safety companywide.  *See Henningsen*, 161 F. Supp. 3d

at 1202-03 (rejecting allegations lacking basis for source's companywide knowledge).

### 3.  Industry-Standard Compensation Cannot Establish Scienter.

Finally, Plaintiffs allege that Cornell had a "strong motive" to mislead investors

because a small portion of his compensation was tied to DEI goals.  (Opp.26.)  But

motive and opportunity allegations are insufficient.  (MTD 34-35.)  Plaintiffs argue

that "motive" is part of the scienter "mosaic."  But "zero plus zero equals zero." *City

of Roseville Emp.'s Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011).

Plaintiffs concede the vast majority of Cornell's pay was tied to Target's stock

price (MTD 35, n.20), but nevertheless argue he was incentivized to promote DEI

efforts at the expense of financial performance (Opp.27).  Even accepting Plaintiffs'

opinion that the two conflicted, Cornell was incentivized to promote financial

14

performance *over* DEI.[19]  In any event, standard incentive compensation cannot establish scienter.  *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253, 1275 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010).  Recognizing this, Plaintiffs assert a new definition of "standard pay," i.e., that DEI incentives are "extraordinary." (Opp.26.) But "extraordinary" refers to unusually high *financial* incentives. *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1335 (S.D. Fla. 2004).  Moreover, Plaintiffs' own sources confirm that companies routinely incorporate ESG into pay, as Target did with Cornell.  (Bebchuk, 48 J. Corp. L. 37, 41 (2022) (Opp.27).)

### 4. Nonfraudulent Inferences Are More Compelling.

Even if Plaintiffs' "tiles" had pieced together an inference of scienter, their inference must be "at least as compelling" as a nonfraudulent one.  (MTD 33-34.) "This is a high hurdle to surmount.  Even reasonable and plausible fraud cases will be dismissed if an inference of poor business judgment—and even negligence or mismanagement—flows even slightly more naturally. . .than an inference of scienter." *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1218 (M.D. Fla. 2014).  Here, *everything* flows against scienter.  Plaintiffs offer no explanation for why Cornell would launch a collection that would both immediately expose his fraud while decimating his performance-based compensation.  Self-immolation is implausible, much less cogent.  *In re Centerline Holdings Sec. Litig.*, 613 F. Supp. 2d 394, 399-401 (S.D.N.Y.

---

[19] Over 77% of Cornell's compensation is determined solely on financial metrics. (Ex.D-39.) In contrast, only 5% of Cornell's compensation is based on the STIP team scorecard, and progress on DEI goals is just one factor of that component.  (*Id.* at 39, 44 (STIP comprises 15% of Cornell's total compensation—of which 67% is based on financial metrics and 33% is based on the team scorecard).)

2009), *aff'd*, 380 F. App'x 91 (2d Cir. 2010). The far more compelling explanation is
that the reaction to the Collection was unexpectedly greater than in years past.

### C.    Plaintiffs Fail To Plead Loss Causation.

Because stock prices fluctuate constantly for all sorts of reasons, loss causation
ensures "that only losses actually attributable to a given misrepresentation are
cognizable." *Meyer v. Greene*, 710 F.3d 1189, 1196 (11th Cir. 2013). Plaintiffs argue
that these "pleading rules are not meant to impose a great burden" and insist that
they've met it by alleging a stock drop after the Collection. (Opp.33.) But Plaintiffs
must plead that "that *[the alleged] misrepresentations* 'caused the loss.'" *Dura Pharms.,
Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). Plaintiffs flunk loss causation for many
reasons, but the main one is simple: in all instances—after the Collection was released,
the backlash ensued, and the Q2 Earnings Call—Target's stock price *rose.*

**The Collection**. Plaintiffs allege that: (1) Defendants misled investors and
inflated Target's stock price by concealing the existence of anti-ESG risk and the
Board's alleged failure to oversee it (§§I.A.1, 4); (2) the Collection was so "uniquely
controversial" that (a) it was ***"prima facie evidence" that the Board failed to oversee risk***
(¶351), and (b) "***certain*** to prompt ***intensely negative reactions***" (¶207); (3) because
Target trades on an efficient market, Target's stock price immediately absorbed these
revelations (¶¶514); and (4) as a result, Target's stock price fell on May 17, 2023 (¶429).

Plaintiffs' allegations are at war with themselves. Plaintiffs claim that the
release of the Collection revealed the supposed fraud. Because (as Plaintiffs agree)
Target's stock trades on an efficient market, that revelation should have immediately

16

caused Target's stock to fall.  (Opp.33); *see also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011).  That didn't happen.  By the AC's own allegations, the Collection was released, at the latest, by May 10, 2023 (¶219), yet Target's stock price *rose* for a week (Ex.O).  This eviscerates loss causation.  *In re Home Loan Servicing Sols., Ltd. Sec. Litig.*, 2016 WL 10592320, at *5 (S.D. Fla. June 6, 2016).

**Collection Backlash**. Recognizing that their timing is off, Plaintiffs instead try to complicate what they claim is uncomplicated.  Plaintiffs argue that, even though the Collection fully revealed the alleged fraud, the boycotts were "partial corrective disclosures," that somehow further revealed it.  (¶¶430-31.) But Plaintiffs fail to explain what additional information was corrected.  Instead, Plaintiffs argue that as customers' response "grew and was reported over time," there were partial corrective disclosures. (Opp.37.)  But these "partial disclosures"—for which Plaintiffs provide no specifics— did not reveal anything *new* and, thus nothing could have possibly "gradually leaked out."[20]  *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 177 (S.D.N.Y. 2012), *aff'd*, 543 F. App'x 72 (2d Cir. 2013).  In any event, Plaintiffs' argument that it took the market over a month to absorb and react to the simple premise that a risk existed contradicts their efficient market theory.  *FindWhat*, 658 F.3d at 1310.[21]

---

[20] In all partial corrective disclosures cases Plaintiffs cite, the plaintiffs alleged *specific* partial disclosures and defendants' stock prices dropped *immediately* after *each* alleged disclosure.  *See Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 918 (11th Cir. 2020) (stock drop next day); *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *20 (M.D. Ga. Mar. 23, 2018) (same day stock drops); *In re Jiangbo Pharms., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1264-65 (S.D. Fla. 2012) (immediate stock drops).

[21] As Plaintiffs' cases show, in rare situations (unlike here) where (1) the market is inefficient or (2) the information is unusually technical, it may take a day or two.  In *Gruber v. Gilbertson* (Opp.39), the court acknowledged the "gradual price decline" theory was plausible because there was evidence that the stock traded in an inefficient market.  628 F. Supp. 3d 473, 486 (S.D.N.Y. 2022). In *Shash* and *Gilead*

**Q2 2023 Earnings Call**.  Plaintiffs also claim that Target's statements during its August 16, 2023 earnings call, provided a further corrective disclosure as it "was the first recognition by *Target itself* that the campaign" harmed the company and "corrected" the Backlash Statements.  (Opp.39.)  But Plaintiffs face the same problem: Target's stock price *rose* on August 16, and continued to rise for two days.  (Ex.O.)

Because they have no response, Plaintiffs distract with two red herrings.  *First*, they argue loss causation is a merits issue.  (Opp.37, 40.)  But courts often dismiss on this ground. *See, e.g.*, *MacPhee v. MiMedx Grp.*, 73 F.4th 1220 (11th Cir. 2023); *Meyer*, 710 F.3d 1189; *Home Loan*, 2016 WL 10592320; *Druskin*, 299 F. Supp. 2d at 1339.

*Second*, Plaintiffs ask a rhetorical question: what caused the stock drop if not the backlash? (Opp.35, 38.) Plaintiffs cannot satisfy their burden by seeking to shift it.  *See Bastian v. Petren Res. Corp.*, 892 F. 2d 680, 683-84 (7th Cir. 1990). In any event, reports cited in the AC refer to multiple factors unrelated to the alleged fraud as driving stock decline, such as resumption of student loan payments. (¶¶234, 236.) *See Dura*, 544 U.S. at 342-43 (no loss causation if other events responsible for the loss or part of it).

## II.    PLAINTIFFS' SECTION 14(A) CLAIM FAILS.

**State of Mind**. Plaintiffs do not dispute that (1) their 14(a) and 10(b) claims rely on the same alleged misstatements; or (2) those allegations sound in fraud.  (MTD 47-48.)  Thus, the heightened pleading standards for scienter under the PSLRA and

---

(Opp.38-39), the revelations involved complex scientific studies. *See Shash v. Biogen, Inc.*, 84 F.4th 1, 20 (1st Cir. 2023); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008).  Once the studies were explained, the stock prices dropped within a day.  *Shash*, 84 F.4th at 20; *Gilead*, 536 F.3d at 1058.

Rule 9(b) apply.  *Lee*, 2021 WL 3912651, at *4 n.3.  Instead, Plaintiffs fixate on 14(a)'s

negligence element, and say that applying the PSLRA and Rule 9(b) to 14(a) claims is

"novel."  (Opp.41-42.)  That misses the point: Plaintiffs' theory sounds in fraud; courts

routinely apply heightened standards to such claims.  *See, e.g.*, *Lee*, 2021 WL 3912651,

at *4 n.3.[22]  Plaintiffs do not dispute that they fail this standard.  (MTD 47-48.)

**Causation**.  Plaintiffs further fail to establish any causal nexus.  Plaintiffs must

plead (1) transaction causation, which requires that shareholders voted as they did

"because of" alleged misstatements, and (2) loss causation, which requires Plaintiffs

plead that the losses resulted directly from the vote.  *McDowell v. Bracken*, 317 F. Supp.

3d 1162, 1180 (S.D. Fla. 2018), *aff'd*, 794 F. App'x 910 (11th Cir. 2019); *Edward J.*

*Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 796-97 (11th Cir. 2010).

Plaintiffs' causation theory is incoherent on both.  *First*, Plaintiffs do not claim

any losses from the 2023 board election.  Instead, they argue that they *may* suffer future

loss *if* the Board issues misstatements or engages in other unspecified loss-causing

actions in the future.  (Opp.43-44.)[23]  This flunks loss causation.  *Jabil*, 594 F.3d at 797.

*Second*, Plaintiffs argue that because their claims are solely about the board

elections, they satisfy transaction causation.  (Opp.43.)  But by the AC's own

---

[22] **Applying PSLRA**: *Cal. Pub. Emp.'s Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144-45, n.8 (3d Cir. 2004) (Opp.41); *Little Gem Life Scis. v. Orphan Med*, 537 F.3d 913, 917 (8th Cir. 2008); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 282 F. Supp. 3d 1074, 1101 (N.D. Cal. 2017) (Opp.45). **Applying Rule 9(b)**: *In re Exxon Mobil Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007); *In re U.S. Off. Prod. Sec. Litig.*, 326 F. Supp. 2d 68, 81 (D.D.C. 2004); *In re Willis Towers Watson Proxy Litig.*, 439 F. Supp. 3d 704, 710 (E.D. Va. 2020) (Opp.41); *In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563, at *9 (E.D.N.Y. Sept. 29, 2023).
[23] Plaintiffs claim to satisfy loss causation because the election was "tied up" in the Collection (Opp.44), but this fails because the vote did not authorize it.  *McDowell*, 317 F. Supp. 3d at 1181.

allegations, the alleged misstatements could not have altered the outcome of the election because voting closed a month *after* the "truth" was revealed (¶¶237, 440.)[24] (MTD 50.)  Plaintiffs counter that voting opened on May 1, 2023, before the "revelation." (Opp.44 n.22.)  But Plaintiffs omit that shareholders could revoke or re-cast their vote up until June 14, 2023.  (Ex. D-74.)  Plaintiffs thus cannot allege that they would have voted differently because Plaintiffs already *knew* of the alleged misstatements *before* (or with time to revoke) their votes.  (¶¶460-61.)  Thus, the causal link between the Proxies and Plaintiffs' alleged injuries is severed beyond repair.

To resist this result, Plaintiffs cite to cases decided before the dual requirements of transaction and loss causation were established,[25] but this Circuit requires both. *Jabil*, 594 F.3d at 796-97.  Thus, the request to void the election fails.  *In re The Home Depot, Inc. S'holder Deriv. Litig.*, 223 F. Supp. 3d 1317, 1331 (N.D. Ga. 2016).  Plaintiffs try to salvage their claim by seeking an injunction, but there is no direct link between the alleged misstatements and the hypothetical injuries, which dooms their request.[26]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the AC with prejudice.

---

[24] Plaintiffs do not deny that 14(a) causation cannot be based on non-binding votes.  Thus, their claims as to the executive compensation and shareholder proposals fail as a matter of law. (MTD 49-50.)

[25] *Compare Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650 (2d Cir. 1979) (solely analyzing transaction causation) and *Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980) (same) (Opp.43) *with Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924 (2d Cir. 1992) (introducing transaction *and* loss causation) (Opp.41).

[26] Plaintiffs try to invent an exception where a vote "incentivized" misconduct, based on two out-of-Circuit cases (Opp.44-45).  But there is no such exception.  Both cases Plaintiffs cite concerned votes that permitted the continuation of illegal schemes, not votes that permitted the Board to continue to exercise its business judgment.  *See Emps. Ret. Sys. of St. Louis v. Jones*, 2021 WL 1890490, at *8-9 (S.D. Ohio May 11, 2021) (illegal bribery); *Wells Fargo*, 282 F. Supp. 3d at 1102 (illegal sales).

Date:  March 20, 2024

Traci T. McKee
FAEGRE  DRINKER  BIDDLE  &
REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Telephone: (239) 286-6910
traci.mckee@faegredrinker.com

Jeffrey P. Justman (*pro hac vice*)
FAEGRE  DRINKER  BIDDLE  &
REATH LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
jeff.justman@faegredrinker.com

Sandra Grannum (*pro hac vice*)
FAEGRE  DRINKER  BIDDLE  &
REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com

*Attorneys for Defendants*

Respectfully submitted,

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
  *Lead Counsel*
Alexander J. Rodney (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
Ashley P. Grolig (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com
alexander.rodney@kirkland.com
jacob.rae@kirkland.com
ashley.grolig@kirkland.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 20, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
    *Lead Counsel*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com