UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIAN CRAIG, et. al.,

    Plaintiffs,

v.                                          Case No:   2:23-cv-599-JLB-KCD

TARGET CORPORATION, et. al.,

    Defendants.
_____/

## ORDER

This matter comes before the Court upon Defendants' motion to transfer this case to the District of Minnesota. (Doc. 68). Plaintiffs responded in opposition (Doc. 83), and Defendants replied (Doc. 90). For the reasons stated herein, Defendants' motion to transfer is **DENIED**.[1]

## BACKGROUND[2]

In 2014, Target hired Defendant Brian C. Cornell as Chief Executive Officer, and its Board of Directors (the "Board") elected him Chairman of the Board. (Doc. 52 at ¶ 7). Following Mr. Cornell's hiring, Target began adopting several environmental, social, governance ("ESG") and diversity, equity, and inclusion ("DEI") initiatives. (*Id.*). These initiatives were incorporated into Target's

---

[1] In addressing the motion to transfer, the Court also addresses Plaintiffs' motion to stay briefing on Defendants' motion to transfer. (Doc. 73). For the reasons stated herein, the Court **DENIES as moot** Plaintiffs' motion to stay (*id.*).

[2] The facts as alleged in the amended complaint are taken as true to the extent they are uncontradicted. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). The Court must accept the facts alleged in the complaint as true unless contradicted by affidavits. *Id.*

corporate strategy and business plan.  (*Id*.).

Target then began a "Pride Month" campaign in June 2015, where Target published a "Pride Manifesto" and accompanying video transcript.  (*Id*. at ¶ 9).  The following year, Target published an announcement in opposition to a North Carolina transgender bathroom law.  (*Id*. at ¶ 10).  Target experienced customer and investor backlash after both publications.  (*Id*. at ¶ 14).  Specifically, shareholders, consumer groups, and conservative commentators repeatedly warned Target that its ESG, DEI, and LGBT initiatives would cause the company to lose customers.  (*Id*. at ¶ 15).

Target released Annual Proxy Statements and Reports in 2021, 2022, and 2023.  (*Id*. at ¶¶ 4, 16).  Plaintiffs accuse Target of including misleading statements and omissions in those filings.  (*Id*. at ¶ 4).  Specifically, Plaintiffs allege that Target misled investors by either falsely stating or omitting the risk of customer boycotts from its ESG and DEI initiatives.  (*Id*.).  According to Plaintiffs, Target shareholders relied on the alleged misleading statements and omissions in re-electing the Board, turning down multiple proposals via shareholder vote to reform the Board's risk oversight functions and approving executive compensation plans that incentivized Target's officers to implement DEI programs.  (*Id*. at ¶ 22).

Following the reelection of the Board, Target undertook a children-and-family-themed "Pride Month" marketing and sales campaign in May 2023 (the "2023 Pride Month Campaign").  (*Id*. at ¶ 6).  The campaign focused on displaying "Pride Month" related merchandise at the front and center of Target's stores across

the United States.  (*Id*. at ¶¶ 203, 260).  Plaintiffs allege that customers subsequently boycotted Target, causing Target to lose $10 billion in market valuation between May 18 and May 23, 2023.  (*Id*. at ¶ 28).  Specifically, Plaintiffs claim that this was due to parents' backlash over the company's LGBT-themed clothing line for children.  (*Id*.).  Between May 17 and October 6, 2024, Target lost more than $25 billion in market capitalization.  (*Id*.).

Plaintiffs now sue Defendants for various securities law violations in the Middle District of Florida.  (*See* Doc. 52).  Defendants moved to transfer this case to the District of Minnesota (Doc. 68), which is the District encompassing Target's headquarters.

## LEGAL STANDARD

Congress defines "venue" as the "geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general." 28 U.S.C. § 1390(a).  The text of the venue provision of the Securities Act of 1934 gives plaintiffs a choice of venue in "the district wherein any act or transaction constituting the violation occurred" or "the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.

"The venue provision of the 1934 Act is strikingly broad and allows suits 'to be brought anywhere that the Act is violated or a defendant does business or can otherwise be found.'" *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1253–54 (11th Cir. 2011) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 149 (1976)).

Without question, the intent of the venue and jurisdiction provisions of the securities laws is to afford potential plaintiffs liberal choice in their selection of a forum. *See Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (citation and quotations omitted).

While Congress has afforded liberal choice in forum selection, a district court may transfer the case if other considerations clearly outweigh plaintiff's choice of forum. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district for the convenience of parties and witnesses, and in the interest of justice. However, courts have not limited their consideration to the three enumerated factors in section 1404(a). In *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005), the Eleventh Circuit identified nine factors for the district courts to consider: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.* at 1135 n.1; *see also Stewart*, 487 U.S. at 34 (Scalia, J., dissenting) (noting that courts have treated the categories in section 1404(a) broadly by "examin[ing] a variety of factors, each of which pertains to facts that currently exist or will exist").

Where a party moves to transfer venue under section 1404(a), "the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

## DISCUSSION

Defendants argue that this action belongs in Minnesota. (Doc. 68). Specifically, Defendants argue that (1) Target's corporate disclosures disseminated from Minnesota, (2) Plaintiffs' claims stem from Minnesota-based conduct involving Minnesota witnesses, (3) the Defendants' alleged conduct has minimal ties with the Middle District of Florida, and (4) this action overlaps with another securities action pending in Minnesota—a district they contend has a lighter civil caseload. (*See id.*). Upon review of Plaintiffs' amended complaint, the parties' briefing, and the entire record, the Court finds that Defendants' motion is due to be **DENIED**.

### I. Venue is proper in the Middle District of Florida.

First, the Court must determine whether venue is proper in the Middle District of Florida. For venue purposes, claims under the Securities and Exchange Act of 1934 may be brought "in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business. . . ." 15 U.S.C. § 78aa(a); *Liles,* 631 F.3d at 1253–54. Here, Plaintiffs bring claims under the Exchange Act, including Section 10(b), Rule 10b-5, Section 14(a), Rule 14a-9, and Section 20(a). (Doc. 52 at 156, 158, 159). Plaintiffs contend that Target transacts business in this District because Target has more than 75 stores in the Middle District of Florida. (Doc. 83 at 21 (citation omitted)). Defendants neither contest

nor refute Plaintiffs' assertion that Target transacts business in this District. Additionally, the purported violative proxy statements were directed into this District to lead Plaintiff Brian Craig and Plaintiff Carol Bowe. Interestingly, nearly as many Target Directors reside in this District as the directors residing in Minnesota. (Doc. 52 at 17–19). Accordingly, the Court finds that venue is proper in the Middle District of Florida.

## II. Defendants have not shown that Plaintiffs' choice of forum is clearly outweighed by other considerations.

Next, the Court must determine whether other considerations clearly outweigh Plaintiffs' choice of forum. Under Eleventh Circuit precedent, the relevant factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel*, 430 F.3d at 1135 n.1. The Court will examine each factor in turn.

### A. The convenience of the witnesses.

Non-party witnesses' convenience is generally considered one of the most important factors in a venue transfer analysis. *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). However, the importance of this factor is significantly diminished where "the

witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Id.* (citing *Mason v. Smithkline Beecham Clinical Labs.,* 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001)).

Defendants argue that this factor weighs in favor of transferring the case because "litigating in Minnesota would be more convenient for the likely witnesses––Target employees who work at Target's Minnesota headquarters." (Doc. 68 at 17). They allege that, because Plaintiffs are bringing securities fraud claims, the likely witnesses are "senior Target officers and employees 'who participated in drafting or distributing' the company's Annual Reports, Proxy Statements, public statements, and DEI programs." (*Id.* at 18 (citation omitted)). Defendants contend these officers and employees live near, work out of, or regularly travel to Target's headquarters in Minneapolis and, thus, litigating in Minnesota would be easier for the witnesses. (*Id.*). Upon careful review of the parties' briefing, the Court disagrees with Defendants.

As stated, the weight given to the convenience of witnesses factor is significantly diminished where the witnesses are employees of a party and their presence at trial can be obtained by that party. *Trinity,* 761 F. Supp. 2d at 1327 (citation omitted). For this factor, courts typically ignore the convenience of witnesses who are employees of the defendant company because their testimony can be easily obtained for depositions and trial. *See Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015) ("Therefore, any employee of [defendant]. . . is ignored in considering [the convenience of witnesses'] factor.").

7

Here, Defendants admit that the officers and employees who participated in the drafting or distributing of Target's corporate disclosures are employees of Target. Target can easily obtain the testimony of their employees and officers for depositions and trial. Further, Target has provided no evidence of witnesses–other than its own employees–who live in the District of Minnesota. Without more information, it is unclear whether it would be more convenient for witnesses not employees of Target to testify in the District of Minnesota rather than the Middle District of Florida. And, as Plaintiffs point out, "depositions can easily be taken by remote means." (Doc. 83 at 15). Even if the location of employees and officers was given more weight, Defendants have not shown that these witnesses are necessarily located in the District of Minnesota. This is because Target only requires employees at its headquarters to be in the office one week per quarter. (*Id.* at 17 (citing Nick Halter, *Target Calls Employees Back to Corporate Headquarters Quarterly in 2024*, AXIOS TWIN CITIES (Dec. 14, 2023), https://www.axios.com/local/twin-cities/2023/12/14/target-office-corporateworkers-downtown)). Defendants bear the burden of showing inconvenience and have not met it. Accordingly, the Court finds that Defendants have not demonstrated that the convenience of witnesses factor outweighs Plaintiffs' choice of forum.

### B. The location of relevant documents and the relative ease of access to sources of proof.

The Court next considers whether the location of relevant documents and the ease of access to sources of proof outweigh Plaintiffs' choice of forum. Specifically, this factor "examines the location of sources of documentary proof and other

8

tangible materials, and the ease with which the parties can transport them to trial." *Trinity*, 761 F. Supp. 2d at 1327.

Here, Defendants contend that the underlying acts giving rise to this action––such as the drafting and dissemination of annual reports, proxy statements, and business decisions—occurred at Target's headquarters in Minnesota. (Doc. 68 at 17). Thus, they contend that it is more convenient for the Court to transfer this action to Minnesota because "the evidence [is] located in Minnesota." (*Id.* at 25). Plaintiff responds by stating, "Target's records are in electronic form, and they can be transferred and produced to and from anywhere in the country." (Doc. 83 at 15). Indeed, Plaintiffs contend that "'[m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof,' thereby reducing the significance of this factor." (*Id.* (citation omitted)). The Court holds that this factor does not favor transfer because modern technology has advanced to allow the electronic transmittal of documents, which lessens the burden of exchanging discoverable information. *See Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243–44 (M.D. Fla. 2016) ("[T]he location of relevant documents and other tangible sources is no longer a heavily weighted factor. . . given that technological advances now permit the electronic transmittal of documents."); *Mason*, 146 F. Supp. 2d at 1363–64 (holding that, where it does not appear that any significant evidence will be lost by refusing transfer, that transfer is improper). Further, it does not appear that Defendants will be unduly burdened in their production of discovery if the action is retained in this Court. Accordingly,

9

this factor does not weigh in favor of transfer.

### C. The convenience of parties.

Defendants briefly state that "transfer to Minnesota would ease the hardship on the parties" because "all of the key witnesses are likely located in Minnesota; thus, a transfer reduces expense and burden." (Doc. 68 at 26). In making this statement, Defendants contend Minnesota is (1) the most convenient venue for the key witnesses (*id.* at 7, 17); (2) where the relevant acts occurred leading to this lawsuit (*id.* at 17, 22, 23); (3) where the evidence is located (*id.* at 25); and (4) Plaintiff's choice of forum is entitled to little weight (*id.* at 17, 24). The Court finds Defendants' argument unpersuasive. While Defendants briefly state that expense would be reduced by transferring this case to Minnesota, Defendants overlook the heavy burdens that transfer would place on the Plaintiffs. Specifically, Plaintiffs would be forced to engage additional lawyers to litigate this action in Minnesota.

Moreover, finding and retaining local counsel in Minnesota may be easy for a billion-dollar company regularly sued in such a forum. Still, the costs and burdens placed on Plaintiffs clearly weigh this factor in favor of Plaintiffs. Accordingly, the Court concludes that Defendants have not shown that the convenience of parties' factor clearly outweighs Plaintiffs' forum choice.

### D. The locus of operative facts.

Next, Defendants argue that the "locus of operative facts" outweighs transfer to Minnesota. (Doc. 68 at 20). In determining the locus of operative facts, the court must look at the site of events from which the claim arises. *Nat'l Tr. Ins. Co.*, 223 F.

10

Supp. 3d at 1245 (citation and quotation marks omitted). The Court finds that this factor is neutral.

Here, Defendants allege that Minnesota is the locus of operative facts because Minnesota is where the alleged conduct occurred. (Doc. 68 at 20). Specifically, Defendants contend "[s]ince Target's headquarters [is] in Minnesota and the alleged misrepresentations and omissions, which are at the heart of Plaintiff's case, all occurred in Minnesota, the District of Minnesota is, by far, the more convenient forum." (*Id.* at 22). However, it is unclear whether the alleged conduct actually occurred in Minnesota. Notably, Plaintiffs point out that many of Target's directors live outside of Minnesota (Doc. 52 at 17–19), and most of its corporate employees are only required to come into the office once per quarter, implying that many of them work remotely (Doc. 83 at 17). Additionally, Target's 2023 shareholder meeting occurred online and in Austin, Texas. (*Id.* at 20 (citation omitted)). Even more, Target's 2020, 2021, and 2022 shareholder meetings all occurred exclusively online. (*Id.* (citation omitted)). Defendants' dominant argument is that many of the witnesses reside in Minnesota due to the location of Target's headquarters. However, that assertion is unpersuasive because Target only requires its corporate employees to work in the office for one week per quarter. (*Id.* at 17). Thus, it is unclear how much of Defendants' alleged conduct actually occurred in Minnesota. The Court finds that this factor is neutral and does not outweigh Plaintiffs' choice of forum.

11

### E. Availability of process to compel the attendance of unwilling witnesses.

The Court finds that this factor weighs in favor of Plaintiffs for the same reasons as discussed with respect to the convenience-of-witnesses factor. As stated previously, Target's witnesses are likely to be its own employees and officers. Target can more easily obtain the testimony of their own employees and officers than non-employees. Also, the Court is unaware of any of Target's witnesses who are not employees or officers of Target. Accordingly, the Court rules that this factor does not clearly outweigh Plaintiffs' choice of forum.

### F. Relative means of the parties.

As to this factor, the Court holds that the relative means of the parties does not weigh in favor of Defendants. As stated in the convenience of parties factor, transferring this case to Minnesota unduly burdens Plaintiffs by forcing them to retain Minnesota counsel. Thus, the factor clearly weighs in favor of Plaintiffs.

### G. The forum's familiarity with the governing law.

Defendants did not address whether this Court or the District of Minnesota would be more familiar with the governing law. (*See* Doc. 68). But, as Plaintiffs point out, this factor is, at best, a draw given that this is a federal securities law case. (*See* Doc. 83 at 25). Because of Defendants' failure to adequately address this factor and the lack of any strong argument, the Court finds this factor neutral.

### H. Weight accorded to Plaintiffs' choice of forum.

Defendants correctly point out that a plaintiffs' "choice of forum is generally given deference. . . ." (Doc. 68 at 23); *see Trinity*, 761 F. Supp. 2d. at 1330 ("The plaintiff's choice of forum is generally a factor heavily weighed in the plaintiff's favor."). As stated, Congress intended that actions brought under the Exchange Act be subject to strikingly broad and less restrictive venue provisions. *Liles*, 631 F.3d at 1253–54. "[T]he intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum." *Vigman*, 764 F.2d at 1317 (citation and internal quotations omitted). While a transfer of venue under section 1404(a) is discretionary, a plaintiff's choice of forum should not be disturbed unless clearly outweighed by other considerations. *See Stewart*, 487 U.S. at 29; *Robinson*, 74 F.3d at 260. As discussed above, none of the "other considerations" or factors favor disturbing the Plaintiffs' choice of forum. Congress has clearly provided liberal choice regarding actions under the Exchange Act. Accordingly, Plaintiffs chose to bring their claims in the Middle District of Florida, and the Court will not disturb Plaintiffs' choice unless Defendants have shown that the factors weigh in favor of transfer, which they have not.

### I. Trial efficiency and interests of justice.

Finally, Defendants argue that considerations of trial efficiency and the interests of justice weigh in favor of transfer. (Doc. 68 at 25–27). Specifically, Defendants argue that (1) Minnesota has a stronger interest in the litigation because the acts giving rise to the claims and the witnesses are based in Minnesota

13

(*id.* at 25), (2) transfer to Minnesota would ease the hardship on the parties and nonparties because all of the key witnesses are likely located in Minnesota (*id.* at 26); (3) a transfer to the District of Minnesota promotes judicial economy and conserves resources (*id.*).  The Court finds these arguments unpersuasive.

As for Defendants' first and second arguments, the Court disagrees for the reasons stated in the locus of operative facts section.  Specifically, it is unclear how many acts giving rise to the claims occurred in Minnesota and how many key witnesses are based there.  This is because many of Target's directors live outside of Minnesota (Doc. 52 at 17–19), and most of its corporate employees are required to come into the office once per quarter, implying that many of them work remotely (Doc. 83 at 17).  Furthermore, as stated previously, Target's 2020, 2021, 2022, and 2023 shareholder meetings did not occur in Minnesota.  (*Id.* at 20 (citations omitted)).  Thus, the Court finds the first and second arguments unpersuasive.

As for Defendants third argument—that a transfer to Minnesota promotes judicial economy and conserves resources—the Court is similarly unconvinced.  In support of this argument, Defendants state that (1) Target is being sued for securities violations in Minnesota in a separate case, *Perez v. Target Corp.*, 0:23-cv-769 (D. Minn. Mar. 29, 2023) ("Perez"), and (2) Minnesota has a lighter caseload than the Middle District of Florida. (Doc. 68 at 26–27).  Defendants argue that these two factors weigh in their favor.  However, the *Perez* case was initiated for an entirely independent reason from this case and did not mention Target's LGBT campaigns.  Notably, the *Perez* case centers around Target's inability to keep its

shelves fully stocked in the first half of 2021, allegedly leading to Target's sales declining. (*Perez*, Doc. 1 at 2). Lastly, both Defendants and Plaintiffs cite competing statistics as to whether the Middle District of Florida has a heavier caseload than Minnesota. (*Compare* Doc. 68 at 14 *with* Doc. 83 at 23). The Court declines to resolve the statistical discrepancy. Indeed, courts tend to favor retention where the statistics demonstrate no significant difference. *Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1247. Accordingly, this aspect of the final factor sheds no meaningful light on the appropriateness of a transfer.

After carefully considering these factors, the Court finds that Target has failed to carry its burden in demonstrating that this Court should transfer this securities litigation case to the District of Minnesota.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' motion to transfer (Doc. 68) is **DENIED**. Plaintiffs' motion to stay briefing on Defendants' motion to transfer (Doc. 73) is **DENIED as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida, on December 4, 2024

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE