# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

|  |  |
|---|---|
| BRIAN CRAIG, CAROL BOWE, INSPIRE ADVISORS, LLC, STEVEN COOK, AND LAURA THOMPSON, | |
| *Plaintiffs*, | No.: 2:23-cv-599-JLB-KCD |
| v. | |
| TARGET CORPORATION, BRIAN C. CORNELL, DAVID P. ABNEY, DOUGLAS M. BAKER, JR., GEORGE S. BARRETT, GAIL K. BOUDREAUX, ROBERT L. EDWARDS, MELANIE L. HEALEY, DONALD R. KNAUSS, CHRISTINE A. LEAHY, MONICA C. LOZANO, GRACE PUMA, DERICA W. RICE, and DMITRI L. STOCKTON, | |
| *Defendants*. | |

## DEFENDANTS' OPPOSITION TO
## <u>PLAINTIFFS' MOTION TO LIFT THE STAY</u>

# TABLE OF CONTENTS

BACKGROUND .................................................................................................3

ARGUMENT ......................................................................................................7

I.      NO GOOD CAUSE EXISTS TO CANCEL THE MEDIATION. ................7

II.     LIFTING THE STAY IS NOT WARRANTED AT THIS TIME. ...............9

       A.     No New Circumstances Justify Lifting the Stay.................................10

       B.     Lifting the Stay Will Not Simplify Any Issues, But Would Instead Significantly Increase Burdens on the Court........................................11

       C.     Lifting the Stay Would Unduly Prejudice Both Parties.......................13

            1.     Lifting the Stay Would Prejudice Defendants............................13

            2.     Pursuing Class Claims in Lieu of Mediating Plaintiffs' Individual Claims Would Prejudice Plaintiffs and Pose Ethical Issues..........................................................................14

CONCLUSION ................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abele v. Hernando Cnty.*,
   161 F. App'x 809 (11th Cir. 2005) .......................................................................8

*Adams v. Equifax Info. Servs., LLC*,
   2023 WL 7458848 (N.D. Ga. Oct. 6, 2023, *report and recommendation
   adopted*, 2023 WL 8723953 (N.D. Ga. Nov. 2, 2023) ...........................................9

*Anderson Living Tr. v. WPX Energy Prod., LLC*,
   306 F.R.D. 312 (D.N.M. 2014) ................................................................... 16, 17

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
   2009 WL 2969566 (D. Del. Sept. 15, 2009) ....................................................9, 10

*In re Bank of Am. Corp. Auction Rate Sec. (ARS) Mktg. Litig.*,
   2009 WL 2031764 (N.D. Cal. July 9, 2009) .......................................................18

*Bernath v. Seavey*,
   2017 WL 564941 (M.D. Fla. Feb. 13, 2017) ........................................................8

*Broadhurst Invs., LP v. Bank of N.Y. Mellon*,
   2010 WL 3154840 (S.D.N.Y. Aug. 2, 2010) .......................................................13

*Burke v. Ruttenberg*,
   102 F. Supp. 2d 1280 (N.D. Ala. 2000) ....................................................... *passim*

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..............................................................................12

*Chancey v. Hartford Life & Acc. Ins. Co.*,
   844 F. Supp. 2d 1239 (M.D. Fla. 2011) ...............................................................9

*Chico v. Dunbar Armored, Inc.*,
   2017 WL 4476334 (S.D. Fla. Oct. 6, 2017) ........................................................17

*Craig v. Target Corp.*,
   2024 WL 4981026 (M.D. Fla. Dec. 4, 2024) .......................................................14

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
    2012 WL 6102068 (S.D. Fla. Dec. 7, 2012) ...................................................... 14

*Flynn v. Polk Cnty.*,
    2013 WL 787414 (M.D. Fla. Mar. 4, 2013) ........................................................ 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................. 14

*Guzman v. Am. Sec. Ins. Co.*,
    2008 WL 11333579 (S.D. Fla. Feb. 13, 2008) .................................................. 11

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ................................................................................ 15

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. 2020) ......................................................................... 17

*Kulig v. Midland Funding, LLC*,
    2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014) .................................................. 19

*Kutzman v. Derrel's Mini Storage, Inc.*,
    2020 WL 5909151 (E.D. Cal. Oct. 6, 2020) ..................................................... 16

*Magana v. Platzer Shipyard, Inc.*,
    74 F.R.D. 61 (S.D. Tex. 1977) .......................................................................... 18

*Maxon v. Sentry Life Ins. Co.*,
    2018 WL 3850011 (M.D. Fla. Apr. 11, 2018) .................................................. 14

*Mayorga v. First Resolution Inv. Corp.*,
    1:12-cv-00587 (E.D.N.Y. Feb. 21, 2012) ......................................................... 19

*Moghaddam v. Dunkin Donuts, Inc.*,
    2002 WL 1940724 (S.D. Fla. Aug. 13, 2002) .................................................. 14

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    293 F.R.D. 483 (S.D.N.Y. 2013) ...................................................................... 12

*PNC Bank, Nat'l Ass'n v. Pharis*,
    2018 WL 5807351 (M.D. Fla. Nov. 6, 2018) ................................................... 11

*In re Principal U.S. Prop. Account Litig.*,
    2010 WL 1645042 (S.D.N.Y. Apr. 22, 2010) .................................................. 14

*River Cross Land Co., LLC v. Seminole Cnty.*,
   2022 WL 20622333 (M.D. Fla. Dec. 12, 2022)....................................................10

*Sam's West, Inc. v. BJ's Wholesale Club Holdings, Inc.*,
   2023 WL 6049841 (M.D. Fla. July 31, 2023) ....................................................10

*In re Snap Inc. Sec. Litig.*,
   394 F. Supp. 3d 1156 (C.D. Cal. 2019).............................................................12

*Tuttle v. Audiophile Music Direct, Inc.*,
   2023 WL 8891575 (W.D. Wash. Dec. 26, 2023) ...............................................16

*Worsham v. TSS Consulting Grp., LLC*,
   2022 WL 22879457 (M.D. Fla. Jan. 10, 2022)....................................................8

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................*passim*

**Rules**

Local Rule 4.03 ...............................................................................................4

**Other Authorities**

S. REP. 104-98 ...............................................................................................11

Stephen J. Choi et al., *Working Hard or Making Work? Plaintiffs' Attorneys Fees in Securities Fraud Class Actions*, 17 J. Empirical Legal Studs. 438 (2020)............................................................................................................18

This is an individual securities action by five Plaintiffs.  ECF No. 83 at 17-18.  As this Court previously noted, this dispute could "stretch for . . . eight years" and presents "a situation where it would be in both parties' interests to discuss whether a settlement can occur."  Tr. 124:19-126:15 (May 22, 2024).[1]  Defendants proposed settlement discussions.  Plaintiffs were on board, too.  So the parties filed a joint motion requesting mediation and staying the case pending its conclusion.  ECF No. 107.  But Plaintiffs' counsel now, in a remarkable about-face, raise a peculiar impediment—they say they understood that they would be mediating on a class-wide basis and seek to back out of mediation and lift the stay that they asked the Court to put in place.  Plaintiffs' new position fails to satisfy the applicable good cause standard for canceling a court-ordered mediation.  It also is inconsistent with what they told the Court in the parties' joint motion—that the parties were exploring "whether *their* dispute can be resolved," ECF No. 107 ¶ 1—not whether they could resolve an unpled dispute on behalf of a hypothetical class that neither Plaintiffs nor their counsel represent.  And it is inconsistent with the basic legal framework governing securities actions.

The Private Securities Litigation Reform Act (the "Reform Act") sets forth a process that ***must*** be followed when a plaintiff brings securities claims on behalf of a putative shareholder class.  Plaintiffs did not follow that process here; they chose to

---

[1] Unless otherwise noted, internal citations and quotations are omitted, and all emphases are added.

pursue their claims as individuals. The Reform Act does not permit Plaintiffs to revisit that choice. It is final. Plaintiffs did not seek appointment as lead plaintiffs, were not appointed, and cannot represent other Target shareholders. Their proposed plan to convert an individual securities action into a class action is unprecedented in the 30 years since the Reform Act was enacted and raises profound legal questions that are completely unnecessary for this Court to resolve.

Accordingly, the Court should deny Plaintiffs' request to end mediation before it has begun. Courts routinely deny such requests, even absent the unusual circumstances present here. And it is not proper for Plaintiffs to refuse to mediate *their claims* but instead demand to mediate a non-existent dispute. Defendants respectfully request that the Court hold the parties to their jointly filed motion to mediate and let the mediation play out, potentially ending this dispute. To facilitate that process, the stay should remain in place. *First*, nothing has changed since the parties' joint motion. *Second*, lifting the stay would not simplify the case or reduce burden on anyone. To the contrary, as the parties have already stated in their joint motion, mediation would conserve judicial resources. ECF No. 107 at 3-4. And lifting the stay would open the door to complex disputes that mediation might avoid entirely. *Third*, lifting the stay would prejudice all parties. Defendants would be denied the opportunity to seek resolution and be forced to resume costly litigation. And the individual Plaintiffs would lose the opportunity to obtain immediate and meaningful recovery. Plaintiffs' counsel may imagine greater upside for themselves. But that belief is not a proper reason to chart a path that would vastly limit their clients' potential recovery (if any)

2

and delay it by close to a decade. Before opening the door to that ethical and legal quagmire, the Court should require Plaintiffs to honor their commitment, mediate, and assess if the offer Defendants are prepared to make is in Plaintiffs' best interest.

## BACKGROUND

Despite accusing Defendants of "misrepresent[ing] the dialogue between the parties" (Mot. ¶ 1), Plaintiffs start in the middle of that dialogue and mischaracterize the snippets they convey. Accordingly, Defendants must properly explain how we got here.

**Defendants reached out to initiate settlement discussions, and Plaintiffs indicated a willingness to explore mediation**. In early December 2024, Defense counsel reached out to Plaintiffs' counsel to propose confidential settlement negotiations. *See* Ex. 1. On December 12, 2024, Plaintiffs' counsel responded that they "are always willing to listen to ways to potentially resolve the case" and requested a draft of the confidentiality agreement to govern any such negotiations. *Id.* Defendants followed up with that draft a few hours later. *Id.* Plaintiffs never responded.

Instead, eleven days later, Plaintiffs' counsel reached out to say that they "intend to seek leave to amend the complaint to add class allegations." Pls.' Ex. A at 2. In a call the next day, however, Plaintiffs indicated that they might be willing to first explore mediation.

**The parties agreed to mediate, and Plaintiffs stated they would only try to amend if the parties were "unable to resolve the case"**. On December 27, 2024,

3

Defendants' counsel followed up and confirmed they would mediate "under Local Rule 4.03." *Id.* Defendants' counsel also conveyed their surprise at Plaintiffs' undue delay in raising class issues: Plaintiffs were proposing to seek a second amendment well over a year into the case, despite the fact that Plaintiffs "could have added class allegations from the outset, but chose not to do so." *Id.* at 1-2. Plaintiffs' counsel responded a few days later, on January 1, 2025, stating:

> We are open to exploring settlement under LR 4.03[,] . . . would consider deferring our motion for leave to amend for a short period while we have at least an initial conversation about potential settlement[, and] . . . would be happy to jointly request a mediation order from the Court to set that up—with an eye towards conducting discussions in mid-January ***and then*** seeking leave to amend the complaint by late January ***if we're unable to resolve the case***.

Pls.' Ex. A at 1. Thus, Plaintiffs' counsel made clear that Plaintiffs would mediate ***first*** to see if the parties can agree to "resolve the case." Only if such a resolution could not be achieved would Plaintiffs then evaluate whether they wanted to seek to convert their individual claims into a putative class action. The commitment to follow Local Rule 4.03 also made clear that Plaintiffs and their counsel could not be representing the interests of anyone else during that mediation; Local Rule 4.03(g) requires confidentiality as against any and all non-parties. L.R. 4.03(g).

**The parties filed a joint motion to mediate and stay that is inconsistent with class-wide resolution**. On January 5, 2025, the parties filed a joint motion to request a Court-appointed mediator and to stay all deadlines pending mediation. ECF No. 107. The Court granted that motion. *First*, it stayed the case and administratively closed the file. ECF No. 108. *Second*, the Court referred the case to Magistrate Judge

Mizell to conduct a settlement conference, ordered that "[a]ll parties *must attend*," and "*must* provide three (3) mutually agreeable dates" by January 17, 2025.  ECF No. 109.

Plaintiffs now say that when they sought a stay, "both parties had a mutual misunderstanding as to what the settlement negotiations would attempt to achieve." Mot. ¶ 2.  But it's not clear how there could have been any such misunderstanding, especially by experienced counsel.  This case is an individual action by five individual Plaintiffs.  Amended Complaint ("AC") ¶ 29; *see also id.* ¶¶ 31-35.  In their joint motion, the parties requested a mediation "to explore whether *their dispute* can be resolved without the need for further proceedings."  ECF No. 107 ¶ 1.  They acknowledged there would be no "further proceedings" if mediation were successful.  *Id.*  That precludes a theoretical class mediation.  Even if the parties could conduct such a mediation as an ethical and legal matter, any agreement would require further proceedings to address:  who would be appointed lead plaintiff and counsel for the new putative class; whether any such settlement could proceed if a new lead plaintiff or new lead counsel objected to it; and preliminary and final approval proceedings with respect to any such settlement if it were still viable following the lead plaintiff-related proceedings.  Thus, "class-wide" resolution is inconsistent with the parties' joint representations.[2]

_____

[2] Plaintiffs argue that Mr. Berry's reference to settling "the case" in his January 1, 2025 email was a "colloquial" framing that should have been interpreted to include class claims that are not part of this case.  Mot. ¶ 4.  But whether "speaking colloquially" or otherwise, there is nothing unclear about the fact that Plaintiffs' counsel said that settlement conversions would come *before* any potential effort to amend.  Pls.' Ex. A at 1 (proposing "conducting [settlement] discussions in mid-January *and then* seeking leave to amend the complaint by late January *if we're unable to resolve the case*").

**Defendants offered 10 dates to Plaintiffs to mediate**.  After the Court ordered mediation, Defendants offered *ten* dates when they would be available to mediate in January and February.  *See* Pls.' Ex. B at 2; ECF No. 110 at 1-2.

**Plaintiffs offered no dates of their own, but instead insisted that any mediation must occur on behalf of a class neither Plaintiffs nor their counsel are permitted to represent**.  Plaintiffs did not respond with any dates of availability.  On a subsequent call on Wednesday, January 15, however, they asked for the first time whether Defendants would consider resolving the action on a class-wide basis.  In response, Defendants noted that approach was impossible because it raises numerous legal and ethical issues.  The following day, on January 16, 2025, Defendants reiterated their *ten* dates of availability.  Pls.' Ex. B at 2.  Defendants also reiterated that Plaintiffs' counsel could not mediate on behalf of a theoretical class, as it "would violate numerous provisions of the Reform Act," including the requirements governing the Court's supervision and appointment of a lead plaintiff and counsel.  *Id*. (citing 15 U.S.C. § 78u-4(a)(3)).  On top of that it raises a quagmire of ethical concerns: while a class action might create the prospect of a windfall for Plaintiffs' counsel, it squarely conflicts with the financial interests of the individual Plaintiffs here in securing the maximum potential recovery for themselves.  The reason is that the Reform Act limits any recovery that Plaintiffs could obtain—if they become class representatives—to an "equal," pro-rata recovery, "on a per share basis" of any recovery obtained by "all other members of the class."  15 U.S.C. § 78u-4(a)(4).  Given

6

the realities of class action litigation, any such recovery would be far lower than what
Plaintiffs could obtain individually.

**Defendants offered *10 further dates* to Plaintiffs to no avail**.  On the morning
of January 17, 2025, Plaintiffs' counsel emailed Defendants' counsel stating that they
intended to lift the stay.  Mot. ¶ 6; Pls.' Ex. B at 1.  Plaintiffs' counsel did not identify
any dates when Plaintiffs would be available to mediate but instead indicated they
wanted to be able to "explain to Judge Mizell's deputy why [Plaintiffs' counsel was]
unable to respond on dates."  Pls.' Ex. B at 1.  Plaintiffs alternatively proposed
"grab[bing] a date in March," but did not offer any dates and expressly conditioned
that proposal on their improper request to lift the stay.  *Id.*

Defendants were therefore forced to communicate the only information that
was available to them:  the full set of ten dates when Defendants were available in
January or February.  *See* ECF No. 110 at 3 & n.2.  On January 21, 2025, Judge
Mizell's courtroom deputy clerk followed up to request that the parties provide dates
of potential availability in April.  After Defendants promptly provided ten days in April
when they are available, and followed up, Plaintiffs finally confirmed their availability
on April 16, 17, and 21, 2025, which Defendants communicated to Judge Mizell's
deputy courtroom clerk.

## ARGUMENT

## I.    NO GOOD CAUSE EXISTS TO CANCEL THE MEDIATION.

Despite filing the joint motion and providing dates to mediate in April, Plaintiffs
ask the Court to "cancel[] the mediation conference."  Mot. at 5.  But a party seeking

to cancel a court-ordered mediation must provide good cause to do so. *See Worsham v. TSS Consulting Grp., LLC*, 2022 WL 22879457, at *1 (M.D. Fla. Jan. 10, 2022) (denying motion to cancel mediation where Court found there was no good cause); *Flynn v. Polk Cnty.*, 2013 WL 787414, at *1-2 (M.D. Fla. Mar. 4, 2013) (same).

Plaintiffs have failed to demonstrate that any good cause exists here. Plaintiffs' only argument in support of cancellation is their assertion that "the currently scheduled mediation cannot lead to an agreement at this time" or "will not be productive." Mot. at 5. That argument fails as a matter of law and is premature.

***First***, the mere assertion by a party that mediation will be unsuccessful is insufficient grounds for cancellation, and courts routinely reject it. *See Abele v. Hernando Cnty.*, 161 F. App'x 809, 813 (11th Cir. 2005) (affirming order compelling mediation despite party's contention that "mediation would be an 'act of futility'"); *Worsham*, 2022 WL 22879457, at *1 (denying plaintiff's motion to cancel mediation based on assertion that "there [was] nothing to be mediated"); *Bernath v. Seavey*, 2017 WL 564941, at *2 (M.D. Fla. Feb. 13, 2017) (ordering parties to engage in mediation despite objection that mediation would be "practically impossible").

***Second***, Plaintiffs' argument is premature. Neither party can know if settlement discussions will be futile until they actually occur. Indeed, the parties and the Court agreed to "Court-ordered mediation with each party physically present" precisely because it "facilitates compromise and resolution, which saves the parties', the court's, and the public's resources." *Chancey v. Hartford Life & Acc. Ins. Co.*, 844 F. Supp. 2d

1239, 1241 (M.D. Fla. 2011). Defendants have diligently sought to abide by that process because Defendants firmly believe that mediation can be successful. Plaintiffs should follow through on the agreed process, appear in good faith at a settlement conference before Judge Mizell, and assess whether a resolution is possible.

## II.    LIFTING THE STAY IS NOT WARRANTED AT THIS TIME.

Likewise, Plaintiffs' argument for lifting the stay is based entirely on their misguided belief that mediation is futile. *See* Mot. at 5. But, as explained above, Plaintiffs haven't *tried* to mediate, so they cannot know whether it will be successful. *See Adams v. Equifax Info. Servs., LLC*, 2023 WL 7458848, at \*6 (N.D. Ga. Oct. 6, 2023) (denying motion to lift stay even where plaintiffs "argu[ed] that mediation . . . will likely be unproductive"), *report and recommendation adopted*, 2023 WL 8723953 (N.D. Ga. Nov. 2, 2023). Before filing their motion, Plaintiffs agreed that mediation was the best path forward. *See* ECF No. 107. Nothing has changed. As Plaintiffs' own case sets forth, "where there are no new circumstances that impose hardship on the plaintiff or that change the court's earlier disposition imposing the stay, the plaintiff's motion to lift the stay should be denied." *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, 2009 WL 2969566, at \*2 (D. Del. Sept. 15, 2009) (cited at Mot. at 4) (denying motion to lift stay). In determining whether to lift a stay, courts consider the procedural posture of the case and whether the stay will simplify the issues and streamline trial, unduly prejudice the parties, or affect judicial economy. *Sam's West, Inc. v. BJ's Wholesale Club Holdings, Inc.*, 2023 WL 6049841, at \*2, 4 (M.D. Fla. July 31, 2023). Each of these

considerations weighs in favor of continuing the stay here until the parties engage in mediation.

### A.    No New Circumstances Justify Lifting the Stay.

Just two weeks before Plaintiffs filed their motion to lift the stay, the parties told the Court that a stay pending mediation would "be beneficial" to both parties, that it might "obviate the need for a trial or continued litigation," and that it would "reduce the burden of litigation" on both the parties and the Court.  ECF No. 107 at 3.  The Court agreed, stayed the case, and referred the action to Judge Mizell for mediation. ECF Nos. 108, 109.  Plaintiffs argue that circumstances have changed because they have "discovered" that Defendants are not amenable to focusing the mediation on a different case that Plaintiffs have not pled.  Mot. at 5.  Those are not "new circumstances that impose hardship on the plaintiff."  *Auto. Techs.*, 2009 WL 2969566, at *2.  The status quo imposes no obligation on Plaintiffs other than one they have already agreed to:  mediation.  Because nothing has changed, the stay should remain in place until after the parties have mediated.  As Plaintiffs' own cases show, the time to request to lift the stay is ***after*** the parties ***attempt*** mediation but fail to achieve resolution.  *See* Mot. at 4-5 (citing *River Cross Land Co., LLC v. Seminole Cnty.*, 2022 WL 20622333, at *1 (M.D. Fla. Dec. 12, 2022) (granting joint motion to lift stay ***after*** the mediation resulted in no resolution); *Guzman v. Am. Sec. Ins. Co.*, 2008 WL 11333579, at *1 (S.D. Fla. Feb. 13, 2008) (same)).

10

**B.      Lifting the Stay Will Not Simplify Any Issues, But Would Instead Significantly Increase Burdens on the Court.**

Continuing "[t]he stay may reduce the burden and cost of litigation" and simplify the case "by facilitating settlement." *PNC Bank, Nat'l Ass'n v. Pharis*, 2018 WL 5807351, at *1 (M.D. Fla. Nov. 6, 2018).  That is exactly what the parties previously told the Court: "successful mediation may obviate the need for a trial or continued litigation."  ECF No. 107 at 3.

On the other hand, Plaintiffs have made no argument that lifting the stay will simplify anything.  To the contrary, it will complicate this action and further burden the Court, embroiling the parties and the Court in a host of complex issues.  The first of those issues will be whether Plaintiffs can amend their complaint to state class allegations, as they propose to do.  *See* Mot. at 4-5.  That raises a threshold issue of whether such an action is even permitted under the Reform Act, which provides strict requirements for procedural steps a plaintiff needs to take, including providing a "sworn certification," that must be "filed with the complaint" when the action is initiated.  15 U.S.C. § 78u-4(a)(2)(A); *see Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319 n.45 (N.D. Ala. 2000) ("The Committee recognizes that certain basic information about the lead plaintiff should be provided *at the outset of litigation*.") (quoting S. REP. 104-98, at 689).  Plaintiffs have failed to comply with that requirement; the requirement to provide early notice to class members "[n]ot later than 20 days after the date on which the complaint is filed"; and the requirement to timely

11

move "not later than 60 days after [the notice]," meaning not later than 80 days after initiating the case, for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).

Resolving that issue alone will place considerable burdens on the Court since, as far as Defendants are aware, Plaintiffs' proposed plan to convert an individual securities action into a class action is unprecedented in the 30 years since the Reform Act was enacted.[3]  And that issue is just one of many reasons why Plaintiffs' proposed amendment is improper.  Other reasons include Plaintiffs' undue delay, their tactical decision to oppose transfer based on their status as individual plaintiffs, and the fact that Plaintiffs only proposed amending the complaint to state class claims after Defendants initiated a conversation about settlement.

Any amendment would also require the Court to conduct lead plaintiff proceedings, a further burden and complexity that is not currently required in this action.  *See* 15 U.S.C. 78u-4(a)(3)(B) (setting out specific process for the Court to appoint lead plaintiffs and counsel at the outset of any federal securities class action); *see generally Burke*, 102 F. Supp. 2d 1280 (analyzing complexities of that process).

None of those steps will simplify this case.  What would simplify this case is mediation, which has the potential to resolve this dispute without further motions.

---

[3] Courts, however, have routinely admonished plaintiffs who fail to follow the Reform Act's lead plaintiff process.  *See In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1158 (C.D. Cal. 2019) (holding that failing to get input from other potential lead plaintiffs during the lead plaintiff appointment process is "contrary to the PSLRA"); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 486 (S.D.N.Y. 2013) (holding that a party cannot designate itself as lead plaintiff without court approval).  "Undertak[ing] a flawed process" can result in disqualifying a litigant from serving as lead plaintiff.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 277 (3d Cir. 2001).

### C.    Lifting the Stay Would Unduly Prejudice Both Parties.

#### 1.    Lifting the Stay Would Prejudice Defendants.

Contrary to Plaintiffs' claims, Mot. at 5, Defendants will be prejudiced if the stay is lifted so that Plaintiffs can improperly seek leave to amend their complaint. "Fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable." *Broadhurst Invs., LP v. Bank of N.Y. Mellon*, 2010 WL 3154840, at *4 (S.D.N.Y. Aug. 2, 2010) (cleaned up).   In *Broadhurst*, the recent ***discovery*** of "similarly situated investors" did not justify a belated pivot to plead class claims.   *Id.* at *2.   Here, Plaintiffs have ***pled*** they knew from the outset that they were similarly situated to other Target investors.   *See, e.g.*, Compl. ¶¶ 18, 20, 96, 196, 205, 227-30, 246, 250, 254, 269-72, 274 (allegations focused on all "Target shareholders"); AC ¶¶ 20, 22, 29, 246, 381, 390, 449-51, 477, 481, 485, 497-98, 501 (same).   With that knowledge, Plaintiffs ***chose*** to file this action as an individual action.   *See* Compl.; AC.   Their late pivot "would be unfair and prejudicial" to Defendants.   *Broadhurst*, 2010 WL 3154840, at *4.

Indeed, in opposing Defendants' motion to transfer, Plaintiffs emphasized that their action is on behalf of a handful of "individual investors." Tr. 51:6-9.  They further argued that Plaintiffs "consist[ed] primarily of Florida residents with relatively low-dollar stock holdings in Target" and who "have limited means."  ECF No. 83 at 1, 20; *see also id.* at 17 ("Plaintiffs hold relatively small amounts of Target stock.").

The Court denied Defendants' transfer motion in deference to the Plaintiffs' choice of forum and their relative burden should the case be transferred to Target's

home forum. *Craig v. Target Corp.*, 2024 WL 4981026, at *4-6 (M.D. Fla. Dec. 4, 2024). But it is well-settled that a "Plaintiffs' forum choice garners little weight" in a class action. *Maxon v. Sentry Life Ins. Co.*, 2018 WL 3850011, at *4 (M.D. Fla. Apr. 11, 2018); *see also Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 2012 WL 6102068, at *23 (S.D. Fla. Dec. 7, 2012) (similar); *Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724, at *2-3 (S.D. Fla. Aug. 13, 2002) (similar). And a plaintiff's "relative means" is "essentially irrelevant in the class action context, since counsel are financing the case on behalf of Plaintiffs, whose modest means relative to those of Defendant are of absolutely no moment." *In re Principal U.S. Prop. Account Litig.*, 2010 WL 1645042, at *5 (S.D.N.Y. Apr. 22, 2010) (quoted in *Maxon*, 2018 WL 3850011, at *4); *see also Credit Bureau*, 2012 WL 6102068, at *26; *Moghaddam*, 2002 WL 1940724, at *4.

And it was only after Defendants raised the prospect of discussing settlement that Plaintiffs' counsel first mentioned the idea of trying to convert this case into a class action. Ex. 1; Pls.' Ex. A at 2; *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 784-85 (3d Cir. 1995) (noting that the "threat of a large class action" supposedly "brought in the absentee's names" is a form of "abuse" by plaintiffs' counsel).

    2.    Pursuing Class Claims in Lieu of Mediating Plaintiffs' Individual Claims Would Prejudice Plaintiffs and Pose Ethical Issues.

Lifting the stay to permit a motion for leave to amend the complaint to convert this case into a class action would also significantly prejudice the individual Plaintiffs,

who *chose* to bring their claims individually, and present a host of ethical issues for Plaintiffs' counsel.

*First*, Plaintiffs will lose the opportunity to individually settle their claims should they seek appointment as class representatives. Plaintiffs, in their own words, "hold relatively small amounts of Target stock." ECF No. 83 at 17. The Reform Act requires the Court to appoint as lead plaintiff the most adequate representative, 15 U.S.C. § 78u-4(a)(3)(B)(i), which is presumed to be the shareholder with the "the largest financial interest," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Indeed, the "main purpose" of having a lead plaintiff under the Reform Act is to empower "investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004); *accord Burke*, 102 F. Supp. 2d at 1330-31 ("Appointing lead plaintiff on the basis of financial interest . . .was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers."). Given their *de minimis* holdings, it is highly unlikely that any of the individual Plaintiffs would be selected as lead plaintiff—effectively stripping away their control over the action (including its resolution) altogether.[4]

---

[4] Nor is it likely that Plaintiffs will be appointed as co-lead plaintiffs, even if they were to aggregate their losses (which would nevertheless remain small). One of the principal purposes of the Reform Act was "to prevent lawyer-driven litigation." *Burke*, 102 F. Supp. 2d at 1330-31. As courts have noted, grouping plaintiffs together to increase their financial interest in the litigation is "inappropriate" and "at odds with the legislative intent behind the Reform Act." *Id.*

Moreover, even if Plaintiffs were selected as lead plaintiffs, their potential recovery (if any) will be a fraction of what they may receive through settling their individual claims. An individual settlement maximizes the possibility of recovery for Plaintiffs, particularly given their small holdings. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 408 n.57 (D.N.M. 2014) ("It is often the case that a plaintiff would receive greater remuneration . . . from an individual action than he would from his proportional share of the class recovery."). In contrast, in a class action, Plaintiffs would, at best, likely "recover a mere fraction of the maximum potential recovery." *See Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 5909151, at *8 (E.D. Cal. Oct. 6, 2020) (describing how courts regularly approve class settlements offering fractional relief); *Burke*, 102 F. Supp. 2d at 1305 n.35 ("[T]he 'victims' on whose behalf these lawsuits are allegedly brought often receive only pennies on the dollar in damages."); *see also Tuttle v. Audiophile Music Direct, Inc.*, 2023 WL 8891575, at *10 (W.D. Wash. Dec. 26, 2023) (similar) (collecting cases).

And Plaintiffs cannot un-ring the class action bell. The Reform Act limits recovery by any class representative to an equal amount, on a per share basis, as all other class members. 15 U.S.C. §§ 78u-4(a)(4), (2)(A)(vi); *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) (no incentive awards for lead plaintiffs beyond pro-rata share). It would substantially prejudice Plaintiffs to pursue a class action without first listening to what Defendants are willing to offer to resolve their individual claims.

In contrast, Plaintiffs suffer no prejudice from continuing the stay pending the parties' participation in mediation. Plaintiffs have now confirmed they are available

for mediation in April, which is just a few months away.  Enforcing the stay during this brief period poses no prejudice to Plaintiffs, particularly where any delay is of their own making.  *See Chico v. Dunbar Armored, Inc.*, 2017 WL 4476334, at *3 (S.D. Fla. Oct. 6, 2017) (granting stay pending mediation where "any prejudice that might result is significantly reduced by the brevity of the requested stay" and the large potential savings in the event of settlement).

***Second***, as Defendants have repeatedly cautioned Plaintiffs' counsel, eschewing Plaintiffs' individual claims to instead pursue class claims poses several ethical issues.

As noted above, there is a potential conflict between the individual Plaintiffs' financial interests in securing a maximum recovery for themselves and the obligations of a lead plaintiff to represent the entire class.  *See Anderson*, 306 F.R.D. at 408 n.57. Plaintiffs will be better off if they can pursue their own interests without regard for those of a class and without the requirement that their recovery be on an equal, per-share basis, to that of all other class members.  15 U.S.C. §§ 78u-4(a)(4), (2)(A)(vi).

In contrast, the financial interests of Plaintiffs' counsel weigh the other way. Indeed, in securities class action settlements, "plaintiffs' attorneys are receiving windfall fee awards . . . at shareholders' expense."  *See, e.g.*, Stephen J. Choi et al., *Working Hard or Making Work? Plaintiffs' Attorneys Fees in Securities Fraud Class Actions*, 17 J. Empirical Legal Studs. 438, 439 (2020); *accord Burke* 102 F. Supp. 2d at 1305 (in securities class actions "shareholders were indirectly required to foot the substantial legal bills of counsel retained only nominally on their behalf").

Thus, the decision to pursue a class action over an individual action creates a conflict between the financial interests of Plaintiffs and their counsel. *See Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 72 (S.D. Tex. 1977) ("[I]t is a reality of class action life that the potential for such abuse lies chiefly in the hands of plaintiff's counsel who, as a negotiator, unfortunately must represent three distinct and inherently conflicting interests: the named plaintiff's, the asserted class members' and his own."). Indeed, one of Congress's goals in passing the Reform Act was to "minimize lawyer driven lawsuits." *In re Bank of Am. Corp. Auction Rate Sec. (ARS) Mktg. Litig.*, 2009 WL 2031764, at *2 (N.D. Cal. July 9, 2009); *see also Burke*, 102 F. Supp. 2d at 1305 (the Reform Act was enacted to prevent plaintiffs' counsel from "litigat[ing] with a view toward ensuring payment for their services without sufficient regard to whether their clients are receiving adequate compensation").

That conflict is only heightened if the Court permits a process whereby Plaintiffs will not be given the opportunity to even hear Defendants' offer before they potentially commit to a process that will foreclose receiving a similarly beneficial offer in the future. For example, the Eastern District of New York denied class certification as "unconscionable" where it was designed to "avoid plaintiff's recovery from defendant." Order, *Mayorga v. First Resolution Inv. Corp.*, 1:12-cv-00587 (E.D.N.Y. Feb. 21, 2012). Similarly, the Southern District of New York denied certification where a plaintiff's lawyer "deprived" the plaintiff "of the opportunity to make [the] decision" to "settle in the face of a satisfactory offer" made to her as an individual. *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, at *3-6 (S.D.N.Y. Sept. 26, 2014). Those

cases reinforce Plaintiffs' counsel's ethical obligation to mediate and consider Defendants' settlement offer ***before*** pursuing class claims.

## CONCLUSION

Thus, Defendants respectfully request that this Court deny Plaintiffs' motion to lift the stay and direct the parties to proceed with mediation.

Date:  January 31, 2025                          Respectfully submitted,


Traci T. McKee                                   /s/ Sandra C. Goldstein
FAEGRE  DRINKER  BIDDLE  &                       Sandra C. Goldstein, P.C. (*pro hac vice*)
REATH LLP                                            *Lead Counsel*
1500 Jackson Street, Suite 201                   Alexander J. Rodney (*pro hac vice*)
Fort Myers, Florida 33901                        Jacob M. Rae (*pro hac vice*)
Telephone:  (239) 286-6910                       Ashley P. Grolig (*pro hac vice*)
traci.mckee@faegredrinker.com                    KIRKLAND & ELLIS LLP
                                                 601 Lexington Avenue
Jeffrey P. Justman (*pro hac vice*)              New York, NY 10022
FAEGRE  DRINKER  BIDDLE  &                       Telephone:  (212) 446-4779
REATH LLP                                        sandra.goldstein@kirkland.com
2200 Wells Fargo Center                          alexander.rodney@kirkland.com
90 South 7th Street                              jacob.rae@kirkland.com
Minneapolis, Minnesota 55402                     ashley.grolig@kirkland.com
Telephone:  (612) 766-7000
jeff.justman@faegredrinker.com


Sandra Grannum (*pro hac vice*)
FAEGRE  DRINKER  BIDDLE  &
REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com


*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
   *Lead Counsel*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com